Raritan River Steel Co. v. Cherry, Bekaert & Holland

§§ 15A-1340.3 and -1340.4 the victim's age is a statutory aggravating factor which the court may consider in the arson case regardless of whether the arson results in a death. The court therefore did not aggravate the sentence for arson based on defendant's conviction in the joined murder.

Moreover, defendant was convicted of first-degree arson. First-degree arson, as distinguished from second-degree, arises where the dwelling house is occupied at the time of the burning. N.C.G.S. § 14-58 (1986). First-degree arson is an offense against both persons and property. N.C.G.S. § 15A-1340.4(1)(j) addresses the victim's *vulnerability. State v. Ahearn,* 307 N.C. 584, 300 S.E. 2d 689 (1983). Even had defendant's child not been harmed by the burning, if it resulted in sufficient charring to constitute arson, defendant would be guilty of first-degree arson and the child's vulnerability because of its young age could still have been used to aggravate defendant's arson conviction. This aggravating factor stands independent of the murder conviction and the trial court could properly consider it. Defendant's assignments of error are overruled.

We hold that defendant received a fair trial, free of prejudicial error.

No error.

RARITAN RIVER STEEL COMPANY v. CHERRY, BEKAERT & HOLLAND, A GENERAL PARTNERSHIP; GARY J. WOLFE; S. DONALD BLANTON; HERMAN O. COLEMAN; C. CLINE COMER; W. DOUGLAS SERRISS; JOE R. NANTZ; CLARENCE EUGENE WILLIAMS, SR.; PRESTON CLARK; HOWARD J. KIES; HARRACE M. ROLNICK; PETER A. CAPRISE; JERRY P. FOX; ERIC C. PRESSLEY; R. TURNER RIVENBARK; WAYNE COMSTOCK; TONY W. WARFFORD; WIT BROWN; LOUIS EDDIE DUTTON; WILLIAM LANIER, JR.; DAVID WHALEY; T. ERNEST SIEVELKORN; JAMES LANEY; HAROLD B. HENDERSON; ALBRY SHAW; J. ARLEY ROWE, JR.; WILLIAM BLANKENSHIP; ROBERT HOLMAN; DON HOLLAND; ANTHONY G. CAMPAS; JOHN COMPTON; DONALD LEONARD; MICHAEL NEWHOUSE; CHARLES WEATHERSBY; WALLACE PERMENTER; CLYDE FUSSELL; WAYNE BUSEY; JERRY LLOYD; DAVID BOLTON; JOHN CORDELL; RALPH DAVIS; HARRY STOLTE, JR.; CHARLES BROWN; WAYNE GRIER; HARRY GRIGGS, JR.; RALPH HAROLD; FRANCES KOGER; KENNETH LITTON, JR.; CHARLES YOUNG; BOBBY BLACK; WILLIAM FLURRY; JACK MOODY; RUDOLF OHME, JR.;

Raritan River Steel Co. v. Cherry, Bekaert & Holland

E. A. THOMAS, JR.; RAYMOND WARCO; E. C. BLACKBURN; ANTHONY MORRIS; W. H. PETERSON; J. DOMINQUEZ; ROBERT HARTER; LLOYD BRAMMER; HENRY COLBRETH; PATRICK CALLEN; W. H. HUFF; JEFF-RY McCLANATHAN; RICHARD ROBERTS; WILBURN ROBERTSON; GEORGE TORNWALL; AND ROBERT WHITE, PARTNERS

SIDBEC-DOSCO, INC. v. CHERRY, BEKAERT & HOLLAND, A GENERAL PART-NERSHIP; GARY J. WOLFE; S. DONALD BLANTON; HERMAN O. COLE-MAN; C. CLINE COMER; W. DOUGLAS SERRISS; JOE R. NANTZ; CLARENCE EUGENE WILLIAMS, SR.; PRESTON CLARK; HOWARD J. KIES; HARRACE M. ROLNICK; PETER A. CAPRISE; JERRY P. FOX; ERIC C. PRESSLEY; R. TURNER RIVENBARK; WAYNE COMSTOCK; TONY W. WARFFORD; WIT BROWN; LOUIS EDDIE DUTTON; WILLIAM LANIER, JR.; DAVID WHALEY; T. ERNEST SIEVELKORN; JAMES LANEY; HAROLD B. HENDERSON; ALBRY SHAW; J. ARLEY ROWE, JR.; WILLIAM BLANKENSHIP; ROBERT HOLMAN; DON HOLLAND; AN-THONY G. CAMPAS; JOHN COMPTON; DONALD LEONARD; MICHAEL NEWHOUSE; CHARLES WEATHERSBY; WALLACE PERMENTER; CLYDE FUSSELL; WAYNE BUSEY; JERRY LLOYD; DAVID BOLTON; JOHN CORDELL; RALPH DAVIS; HARRY STOLTE, JR.; CHARLES BROWN; WAYNE GRIER; HARRY GRIGGS, JR.; RALPH HAROLD; FRANCES KOGER; KENNETH LITTON, JR.; CHARLES YOUNG; BOBBY BLACK; WILLIAM FLURRY; JACK MOODY; RUDOLF OHME, JR.; E. A. THOMAS, JR.; RAYMOND WARCO; E. C. BLACKBURN; ANTHONY MOR-RIS; W. H. PETERSON; J. DOMINQUEZ; ROBERT HARTER; LLOYD BRAMMER; HENRY COLBRETH; PATRICK CALLEN; W. H. HUFF; JEFF-RY McCLANATHAN; RICHARD ROBERTS; WILBURN ROBERTSON; GEORGE TORNWALL; AND ROBERT WHITE, PARTNERS

No. 123PA86

(Filed 5 May 1988)

**1. Accountants § 1; Negligence § 2— tort of negligent misrepresentation**

The tort of negligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care.

**2. Accountants § 1— audited financial statements—showing of justifiable reliance**

A party cannot show justifiable reliance on information contained in audited financial statements without showing that he relied upon the actual financial statements themselves to obtain this information.

**3. Accountants § 1— audited financial statements—negligent misrepresentation by accountants—insufficient complaint**

Plaintiff's complaint was insufficient to state a claim against defendant ac-countants for negligent misrepresentation in the preparation of an audit report of the financial statements of a corporation where plaintiff alleged that it got the financial information upon which it relied in extending credit to the

audited corporation from a Dun & Bradstreet report rather than from the audited statements themselves.

**4. Accountants § 1 — audited financial statements — negligent misrepresentation by accountants — sufficient complaint**

A second plaintiff did not plead facts which defeat its negligent misrepresentation claim against defendant accounting firm where it did not allege that it relied on sources other than the audited financial statements in extending credit to the audited corporation.

**5. Accountants § 1 — scope of accountant's liability to third persons**

The rule set forth in *Restatement (Second) of Torts* § 552 (1977) is adopted as the standard for determining the scope of an accountant's liability to persons other than the client for whom an audit was prepared. Under this rule, an accountant's liability extends not only to those with whom the accountant is in privity or near privity but also to those persons, or classes of persons, whom he knows and intends will rely upon his opinion or whom he knows his client intends will so rely.

**6. Accountants § 1 — client's use of audited statements — knowledge by auditor**

It makes no difference whether an auditor's knowledge that his client intends to supply information to another person or limited groups of persons is acquired from his client or from another source.

**7. Accountants § 1 — negligent misrepresentation in audited reports — duty of care to creditors**

In an action against accountants for negligent misrepresentation in the preparation of audited financial statements for a corporation, plaintiff's complaint was sufficient to show that defendants owed it a duty of care where plaintiff alleged that, when defendants prepared audited financial statements for the corporation, they knew: (1) the statements would be used by the audited corporation to represent its financial condition to creditors who would extend credit on the basis of them; and (2) plaintiff and other creditors would rely upon these statements.

Justice WHICHARD did not participate in the consideration or decision of this case.

ON Cherry, Bekaert & Holland's petition for discretionary review of a decision of the Court of Appeals, 79 N.C. App. 81, 339 S.E. 2d 62 (1986), reversing in part the order of the trial court entered 9 May 1985 allowing defendants' motion to dismiss. Heard in the Supreme Court 11 February 1987.

*Grier and Grier, by Joseph W. Grier, III and Richard C. Belthoff, Jr., for plaintiff-appellee Raritan River Steel Company.*

*Golding, Crews, Meekins & Gordon, by Rodney A. Dean and Andrew W. Lax, for plaintiff-appellee Sidbec-Dosco, Inc.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, by James G. Billings and Martha Jones Mason, for defendant-appellants.*

*Smith, Helms, Mulliss & Moore, by McNeill Smith, amicus curiae.*

EXUM, Chief Justice.

As the case comes before us it is an action against accountants for negligent misrepresentation. Plaintiffs, creditors of Intercontinental Metals Corporation ("IMC"), allege they incurred damages when they extended credit to IMC in reliance on incorrect information contained in an audit report on IMC's financial status prepared for IMC by defendants. Plaintiffs claim defendants were negligent in their preparation of the report.

Interesting questions of first impression are presented. The first deals with whether plaintiffs who have relied on financial information in an accountant's audit report must demonstrate that they obtained the information from the actual report itself. We conclude that they must. The second question involves the scope of an accountant's liability to persons other than the client for whom the audit report was prepared. We conclude that the scope of liability is best measured by the approach set out in the *Restatement (Second) of Torts* § 552 (1977).

I.

According to the complaints Raritan River Steel Company and Sidbec-Dosco, Inc. (hereinafter "Raritan" and "Sidbec-Dosco," respectively) in these consolidated actions are creditors of IMC. Defendants are a firm of certified public accountants, and the individual partners of the firm, retained by IMC to provide an audit of the company's financial statements for the years ending 30 September 1980 and 30 September 1981. Plaintiffs extended credit to IMC on the basis of what they contend was an incorrect overstatement of the company's net worth contained in the audit reports prepared by defendants. For their losses resulting from this extension of credit to IMC plaintiffs seek to hold defendants liable on two legal theories. The first is that defendants breached their contract with IMC and plaintiffs may take advantage of the breach as third-party beneficiaries of the contract. The second theory is negligent misrepresentation.

The trial court granted defendants' motions to dismiss plaintiffs' complaints for failure to state a claim upon which relief can be granted. N.C.G.S. § 1A-1, Rule 12(b)(6) (1983). The Court of Appeals reversed except for the dismissal of Sidbec-Dosco's third-party beneficiary claim, which it affirmed. We allowed in part defendants' petition for discretionary review. We agreed to review only the issues arising on plaintiffs' negligent misrepresentation claims. We declined to review the Court of Appeals' rulings that Raritan had stated a third-party beneficiary claim and Sidbec-Dosco had not. We now reverse the Court of Appeals' decision that Raritan has stated a claim for negligent misrepresentation. We affirm the Court of Appeals' decision that Sidbec-Dosco has stated a claim for negligent misrepresentation, albeit for different reasons.

II.

Defendants contend that the trial court properly dismissed both Raritan's and Sidbec-Dosco's complaints pursuant to Rule 12(b)(6) because neither complaint alleged reliance on the financial statements defendants audited. We agree with regard to Raritan but disagree as to Sidbec-Dosco.

A.

THE RARITAN CLAIM

Raritan's complaint states in pertinent part:

4. Defendant Cherry Bekaert was engaged, pursuant to a valid and enforceable contract, to examine the financial statements of Intercontinental Metals Corporation, Intercontinental Metals Trading Corporation and other related companies (collectively hereafter "IMC") as of September 30, 1981 and September 30, 1980, in accordance with Generally Accepted Auditing Standards and to express an opinion as to whether or not such financial statements presented fairly the financial position of IMC and the results of its operations and changes in its financial position for the years ending September 30, 1980 and September 30, 1981. Defendant Cherry Bekaert published its Report of Certified Public Accountants, Consolidated Financial Statements, Years ended September 30, 1981 and 1980 on or about January 30, 1982.

. . . .

6. Plaintiff had over a period of years sold hot-rolled carbon wire rod (raw steel) to IMC on open account, relying on information available to plaintiff with respect to the financial condition of IMC.

7. Subsequent to May 6, 1982, IMC placed orders for hot-rolled carbon wire rod (raw steel) with plaintiff in substantial amounts. Plaintiff's inquiry with respect to the current financial position of IMC on or about May 6, 1982 included a report from Dun & Bradstreet, Inc. showing IMC's audited net worth as of September 30, 1981, to be $6,964,475.00. The Dun & Bradstreet, Inc. report made specific reference to defendant Cherry Bekaert's Report of Certified Public Accountants as the source of information contained in its report.

8. In reliance upon information contained in the Dun & Bradstreet, Inc. report, as supplied by defendant Cherry Bekaert's Report of Certified Public Accountants, plaintiff extended credit to IMC in excess of $2,247,844.61.

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Sutton v. Duke*, 277 N.C. 94, 176 S.E. 2d 161 (1979). " '[A] complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff[s] [are] entitled to no relief under any state of facts which could be proved in support of the claim.' " *Id.* at 103, 176 S.E. 2d at 166 (quoting 2A Moore's Federal Practice § 12.08 (2d ed. 1968) ). While the concept of notice pleading is liberal in nature, a complaint must nonetheless state enough to give the substantive elements of a legally recognized claim or it may be dismissed under Rule 12(b)(6). *Stanback v. Stanback*, 297 N.C. 181, 204, 254 S.E. 2d 611, 626 (1979). Moreover, if a complaint pleads facts which serve to defeat the claim it should be dismissed. *Sutton v. Duke*, 277 N.C. at 102, 176 S.E. 2d at 166.

Raritan alleges that it got the financial information upon which it relied, essentially IMC's net worth, not from the audited statements themselves, but from information contained in Dun & Bradstreet. This allegation, we conclude, defeats Raritan's claim for negligent misrepresentation so as to render it dismissible under Rule 12(b)(6).

[1, 2]  The tort of negligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care. *Howell v. Fisher,* 49 N.C. App. 488, 272 S.E. 2d 19, *disc. rev. denied,* 302 N.C. 218, 277 S.E. 2d 69 (1981); *Davidson and Jones, Inc. v. County of New Hanover,* 41 N.C. App. 661, 255 S.E. 2d 580, *disc. rev. denied,* 298 N.C. 295, 259 S.E. 2d 911 (1979). We conclude that a party cannot show justifiable reliance on information contained in audited financial statements without showing that he relied upon the actual financial statements themselves to obtain this information.

[3]  Only one court, to our knowledge, has touched on the question whether a plaintiff must show that he relied upon the actual audited statements prepared by an accountant in order to have a viable claim for the accountant's negligent misrepresentation. The New Jersey Supreme Court seems to require such a showing as essential to the claim. *H. Rosenblum, Inc. v. Adler,* 93 N.J. 324, 352-53, 461 A. 2d 138, 153 (1983). After stating an expansive test for assessing accountants' liability, the Court limited its holding by declaring:

> The principle that we have adopted applies by its terms only to those foreseeable users who receive the audited statements from the business entity for a proper business purpose to influence a business decision of the user, the audit having been made for that business entity. Thus, for example, an institutional investor or portfolio manager who does not obtain audited statements from the company would not come within the stated principle.

*Id.* We have not found, nor have plaintiffs cited, a case in which the plaintiffs prevailed against an auditing accountant on a negligent misrepresentation claim without demonstrating that they relied upon the accountant's actual audit opinion. Even in cases, such as *Rosenblum,* in which courts have broadened the scope of those to whom the accountant owes a duty, plaintiffs have been able to show at least that they relied directly on the audited financial statements. *See International Mortgage Co. v. John P. Butler Accountancy Corp.,* 177 Cal. App. 3d 806, 223 Cal. Rptr. 218 (1986); *Touche Ross v. Commercial Union Ins.,* 514 So. 2d 315 (Miss. 1987); *H. Rosenblum, Inc. v. Adler,* 93 N.J. 324, 461 A. 2d

138; *Citizens State Bank v. Timm, Schmidt & Co.*, 113 Wis. 2d 376, 335 N.W. 2d 361 (1983).

Our holding that reliance on the audited financial statements is required in these kinds of cases stems in part from an understanding of the audit report. An audit report represents the auditor's opinion of the accuracy of the client's financial statements at a given period of time. *See generally* R. Gormley, *The Law of Accountants and Auditors* 1-26 (1981). The financial statements themselves are the representations of management, not the auditor. B. Ferst, *Basic Accounting for Lawyers* 11 (3d ed. 1975). Isolated statements in the report, particularly the net worth figure, do not meaningfully stand alone; rather, they are interdependent and can be fully understood and justifiably relied on only when considered in the context of the entire report, including any qualifications of the auditor's opinion and any explanatory footnotes included in the statements.

Raritan alleges that it relied not upon the audited financial statements as prepared by defendants but upon "information contained in the Dun & Bradstreet, Inc. report. . . ." Raritan thus pleads facts which defeat its claim for negligent misrepresentation and render this claim dismissible under Rule 12(b)(6).

### B.

#### THE SIDBEC-DOSCO CLAIM

Sidbec-Dosco's complaint states in relevant part:

17. That based upon financial information showing substantial net worth of IMC, the Plaintiff extended substantial unsecured credit to IMC during 1982.

. . . .

24. That the Plaintiff has incurred substantial expenses and damages as a direct result of its extension of credit to IMC and IMTC in reliance on the reported financial condition of these entities.

[4] Because Sidbec-Dosco does not allege that it relied on sources other than the audited financial statements it has not pleaded facts which defeat its claim and its complaint is not dismissible on this ground. Under the liberal rules of notice

pleading Sidbec-Dosco's complaint may not be dismissed unless "it appears to a certainty" that Sidbec-Dosco is not entitled to relief under any "state of facts." *Sutton v. Duke*, 277 N.C. at 103, 176 S.E. 2d at 166. Under its pleading Sidbec-Dosco may be able to prove at trial that it did indeed rely on the audit report prepared by defendants.

### III.

The more difficult question raised by Sidbec-Dosco's complaint is whether it alleges enough to show that defendants owed it a duty of care.

The complaint specifically states:

5. That at the time the Defendant prepared the audited financial statements for IMC, the Defendant knew that such financial statements would be used for, among other purposes, general representations by the company of its financial condition, and that extensions of credit to IMC and its affiliated companies would be based upon such statements.

. . . .

22. That the Defendant's contract with IMC was entered into for the direct benefit of the Plaintiff and other creditors *who the Defendant knew would be relying upon such information.* (Emphasis supplied.)

Courts in our sister states have recognized at least four different approaches to determine the scope of an accountant's liability for negligent misrepresentation in the context of financial audits. The most restrictive standard was first enunciated in an opinion by then Chief Judge Cardozo of the New York Court of Appeals, in which the Court concluded that to be liable for negligent misrepresentation, an accountant must be in privity of contract with the person seeking to impose liability or there must be "[a] bond . . . so close as to approach that of privity." *Ultramares Corp. v. Touche, Niven & Co.*, 255 N.Y. 170, 182-83, 174 N.E. 441, 446 (1931). Several jurisdictions follow this restrictive view. *See, e.g., Toro Co. v. Krouse, Kern & Co., Inc.*, 827 F. 2d 155 (7th Cir. 1987) (applying Indiana law); *Robertson v. White*, 633 F. Supp. 954 (W.D. Ark. 1986) (applying Arkansas law); *Briggs v. Sterner*, 529 F. Supp. 1155 (S.D. Iowa 1981) (applying Iowa law); *Shofstall v.*

*Allied Van Lines, Inc.*, 455 F. Supp. 351 (N.D. Ill. 1978). Recently the New York Court of Appeals reaffirmed its reliance on the *Ultramares* approach and announced criteria with which to determine whether the "privity or near-privity" standard had been met. *Credit Alliance Corp. v. Arthur Andersen & Co.*, 65 N.Y. 2d 536, 493 N.Y.S. 2d 536, 483 N.E. 2d 110 (1985). The Court said:

> Before accountants may be held liable in negligence to non-contractual parties who rely to their detriment on inaccurate financial reports, certain prerequisites must be satisfied: (1) the accountants must have been aware that the financial reports were to be used for a particular purpose or purposes; (2) in the furtherance of which a known party or parties was intended to rely; and (3) there must have been some conduct on the part of the accountants linking them to that party or parties, which evinces the accountant's understanding of that party or parties' reliance.

*Id.* at 443, 483 N.E. 2d at 118.

A less restrictive rule is set forth in the *Restatement (Second) of Torts* § 552 (1977). That section provides in pertinent part:

*Information Negligently Supplied for the Guidance of Others.*

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

> (2) . . . [T]he liability stated in Subsection (1) is limited to loss suffered

> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

> (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

*Restatement (Second) of Torts* § 552 (1977). As we understand it, under the Restatement approach an accountant who audits or prepares financial information for a client owes a duty of care not only to the client but to any other person, or one of a group of persons, whom the accountant or his client intends the information to benefit; and that person reasonably relies on the information in a transaction, or one substantially similar to it, that the accountant or his client intends the information to influence. If the requisite intent is that of the client and not the accountant, then the accountant must know of his client's intent at the time the accountant audits or prepares the information. A number of jurisdictions adhere to the Restatement standard. *See, e.g., Ingram Industries, Inc. v. Nowicki,* 527 F. Supp. 683 (E.D. Ky., 1981) (applying Kentucky law); *Badische Corporation v. Caylor,* 257 Ga. 131, 356 S.E. 2d 198 (1987); *Spherex, Inc. v. Alexander Grant & Co.,* 122 N.H. 898, 451 A. 2d 1308 (1982); *Blue Bell, Inc. v. Peat, Marwick, Mitchell & Co.,* 715 S.W. 2d 408 (Tex. App. 1986).

The courts of three states have recently adopted a position which extends an accountant's liability to all persons whom the accountant should reasonably foresee might obtain and rely on the accountant's work. *See International Mortgage Co. v. John P. Butler Accountancy Corp.,* 177 Cal. App. 3d 806, 223 Cal. Rptr. 218; *Touche Ross v. Commercial Union Ins.,* 514 So. 2d 315; *Citizens State Bank v. Timm, Schmidt & Co.,* 113 Wis. 2d 376, 335 N.W. 2d 361; *see also H. Rosenblum, Inc. v. Adler,* 93 N.J. 324, 461 A. 2d 138 (limiting the reasonably foreseeable test to those persons who actually receive the accountant's work from the accountant's client).

The fourth approach, adopted below by the Court of Appeals, was first enunciated in *Biakanja v. Irving,* 49 Cal. 2d 647, 320 P. 2d 16 (1958), where the California Supreme Court held a notary public liable to an intended beneficiary under a negligently prepared will. The California Court said:

The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the

closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm.

*Id.* at 650, 320 P. 2d at 19. Several of the *Biakanja* factors were applied to assess an accountant's liability for negligent misrepresentation by the Missouri Court of Appeals in *Aluma Kraft Mfg. Co. v. Elmer Fox & Co.*, 493 S.W. 2d 378 (Mo. App. 1973).

We reject the *Ultramares* "privity or near-privity" approach, as elucidated in *Credit Alliance,* because it provides inadequately for the central role independent accountants play in the financial world. Accountants' audit opinions are increasingly relied upon by the investing and lending public in making financial decisions. *See* Wiener, *Common Law Liability,* 20 San Diego L. Rev. 233, 250 (1983). The accounting profession itself has recognized as much. The Financial Accounting Standards Board has stated that

[m]any people base economic decisions on their relationships to and knowledge about business enterprises and thus are potentially interested in the information provided by financial reporting. Among the potential users are owners, lenders, suppliers, potential investors and creditors, employees, management, directors, customers, financial analysts and advisors . . . and the public.

Comment, *The Citadel Falls?—Liability For Accountants In Negligence To Third Parties Absent Privity: Credit Alliance Corp. v. Arthur Anderson & Co.,* 59 St. John's L. Rev. 348, 360 (1985) (citing 2 American Institute of Certified Public Accountants, AICPA Professional Standards ET, §§ 51.04, 101.01 (1981)). Because of this heavy public reliance on audited financial information we believe an approach that protects those persons, or classes of persons, whom an accountant knows will rely on his audit opinion, but who may not otherwise be in "privity or near privity," with him is desirable.

Although the *Ultramares* approach to accountants' liability seems unduly restrictive, we also decline to adopt the "reasonably foreseeable" test because it would result in liability more expansive than an accountant should be expected to bear. Courts which extend an accountant's liability to all reasonably foreseen users of

his financial information do so on the ground that there is no good reason to exempt accountants from the general rule that a negligent actor is liable for all reasonably foreseeable consequences of his negligence. *See International Mortgage Co. v. John P. Butler Accountancy Corp.*, 177 Cal. App. 3d at 819-20, 223 Cal. Rptr. at 226; *Rosenblum v. Adler*, 93 N.J. at 339-41, 461 A. 2d at 145-47; *Citizens State Bank v. Timm, Schmidt & Co.*, 113 Wis. 2d at 386, 335 N.W. 2d at 366. The reasoning of the *Rosenblum* court is representative. It analogized a negligent misrepresentation claim against an accountant to a products liability claim against a manufacturer and concluded that public policy did not justify disparate negligence standards. *Rosenblum v. Adler*, 93 N.J. at 341, 461 A. 2d at 147.

Between the production and distribution of an accountant's audit report and the design and manufacture of a product we perceive significant differences which justify establishing a narrower class of plaintiffs to whom the accountant owes a duty of care. Designers and manufacturers have control over the processes by which the products enter the stream of commerce. *See* R. Gormley, *The Foreseen, The Foreseeable, and Beyond—Accountants' Liability to Nonclients*, 14 Seton Hall L. Rev. 528, 552 (1984). Manufacturers, and to a lesser extent designers, can limit their potential liability by controlling the number of products they release into the marketplace. Auditors, on the other hand, have no control over the distribution of their reports, and hence lack control over their exposure to liability. Moreover, as noted previously, auditors do not control their client's accounting records and processes. B. Ferst, *Basic Accounting for Lawyers* 11 (3d ed. 1975). While, in the final analysis, an auditor renders an opinion concerning the accuracy of his client's records, he necessarily relies, in some measure, on the client for the records' contents.[1]

1. The description of the auditing process by the American Institute of Certified Public Accountants in its Statement on Auditing Standards reveals the degree to which auditors are unable to control certain variables:

An examination made in accordance with generally accepted auditing standards is subject to the inherent limitations of the auditing process. . . . [T]he auditor's examination, based on the concept of selective testing of the data being examined, is subject to the inherent risk that material errors or irregularities, if they exist, will not be detected. The risk that material errors or irregularities will not be detected is increased by the possibility of management's override of internal controls, collusion, forgery, or unrecorded

Because of the accountant's inability to control the distribution of his report, as well as his lack of control over some of the contents of the statements he assesses, a standard which limits his potential liability is appropriate.

A more fundamental difference between product designers and manufacturers and accountants lies in their differing expectations concerning their work product. Manufacturers and designers fully expect that their products will be used by a wide variety of unknown members of the public. Indeed, this is their hope, for with wider use will come increased profits. This is not the case when an accountant prepares an audit. An accountant performs an audit pursuant to a contract with an individual client. The client may or may not intend to use the report for other than internal purposes. It does not benefit the accountant if his client distributes the audit opinion to others. Instead, it merely exposes his work to many whom he may have had no idea would scrutinize his efforts. We believe that in fairness accountants should not be liable in circumstances where they are unaware of the use to which their opinions will be put. Instead, their liability should be commensurate with those persons or classes of persons whom they know will rely on their work. With such knowledge the auditor can, through purchase of liability insurance, setting fees, and adopting other protective measures appropriate to the risk, prepare accordingly.

It is instructive that Judge Cardozo, the architect of reasonable foreseeability as the touchstone for products liability, *MacPherson v. Buick Motor Co.*, 217 N.Y. 282, 111 N.E. 1050 (1916), declined to adopt the same standard for accountants' liability in

---

transactions. Certain acts, such as collusion between client personnel and third parties or among management or employees of the client, may result in misrepresentations being made to the auditor or in the presentation to the auditor of falsified records or documents that appear truthful and genuine. Unless the auditor's examination reveals evidential matter to the contrary, his reliance on the truthfulness of certain representations and on the genuineness of records and documents obtained during his examination is reasonable. . . . Further, the auditor cannot be expected to extend his auditing procedures to seek to detect unrecorded transactions unless evidential matter obtained during his examination indicates that they may exist. For example, an auditor ordinarily would not extend his auditing procedures to seek failures to record the receipt of cash from unexpected sources.

1 Prof. Stand. [AICPA] (CCH) AU §§ 327.11-.12 (1982).

*Ultramares.* Judge Cardozo distinguished accountants from manufacturers because of the potential for excessive accountants' liability. He wrote that if accountants could be held liable for negligence by those who were not in privity, or nearly in privity, accountants would face "liability in an indeterminate amount for an indeterminate time to an indeterminate class." *Ultramares Corp. v. Touche, Niven & Co.*, 255 N.Y. at 179-80, 174 N.E. at 444. Because of this potential for inordinate liability Judge Cardozo concluded, as do we, that accountants should be held liable to a narrower class of plaintiffs than the class embraced by the reasonable foreseeability test.

We also reject the *Biakanja* balancing test adopted by the Court of Appeals. This test has been applied by only one other court to assess an accountant's liability. *See Aluma Kraft Mfg. Co. v. Elmer Fox & Co.*, 493 S.W. 2d 378 (Mo. App. 1973). More importantly, the *Biakanja* test is difficult to apply. It requires that the "moral blame" of the defendant and the "policy of preventing future harm" be considered in determining whether the defendant should be held liable. These factors are not capable of precise application and seem to add little to an assessment of whether a defendant violated a particular duty of care. Furthermore, the *Biakanja* test approximates a "reasonable foreseeability" test. One of the factors in the test is "the foreseeability of harm to the plaintiff." *Biakanja v. Irving*, 49 Cal. 2d at 650, 320 P. 2d at 19. For the reasons already specified, we decline to adopt a standard which would extend accountants' liability to all reasonably foreseeable plaintiffs.

[5] We conclude that the standard set forth in the *Restatement (Second) of Torts* § 552 (1977) represents the soundest approach to accountants' liability for negligent misrepresentation. It constitutes a middle ground between the restrictive *Ultramares* approach advocated by defendants and the expansive "reasonably foreseeable" approach advanced by plaintiffs. It recognizes that liability should extend not only to those with whom the accountant is in privity or near privity, but also to those persons, or classes of persons, whom he knows and intends will rely on his opinion, or whom he knows his client intends will so rely. On the other hand, as the commentary makes clear, it prevents extension of liability in situations where the accountant "merely knows of the ever-present possibility of repetition to anyone, and the possibili-

Raritan River Steel Co. v. Cherry, Bekaert & Holland

ty of action in reliance upon [the audited financial statements], on the part of anyone to whom it may be repeated." *Restatement (Second) of Torts* § 552, Comment h. As such it balances, more so than the other standards, the need to hold accountants to a standard that accounts for their contemporary role in the financial world with the need to protect them from liability that unreasonably exceeds the bounds of their real undertaking.

[6]  We acknowledge that courts have not been uniform in their application of the Restatement approach. *See generally* R. Gormley, *The Foreseen, The Foreseeable, and Beyond—Accountants' Liability to Nonclients*, 14 Seton Hall L. Rev. 528, 540-48 (1984). Some confusion arises due to illustration 10 under Comment h.[2] This illustration has been read by some to mean that liability turns on whether the accountant's client specifically mentions a person or class of persons who are to receive the audited financial statements. *See Blue Bell v. Peat, Marwick, Mitchell & Co.*, 715 S.W. 2d at 412. The Restatement's text does not demand that the accountant be informed by the client himself of the audit report's intended use. The text requires only that the auditor *know* that his client intends to supply information to another person or limited group of persons. Whether the auditor acquires this knowledge from his client or elsewhere should make no difference. If he knows at the time he prepares his report that specific persons, or a limited group of persons, will rely on his work, and intends or knows that his client intends such reliance, his duty of care should extend to them.

[7]  Applying the Restatement test to Sidbec-Dosco's complaint, we conclude Sidbec-Dosco has stated a legally sufficient claim

---

2. Example 10 under Commentary h provides as follows:

A, an independent public accountant, is retained by B Company to conduct an annual audit of the customary scope for the corporation and to furnish his opinion on the corporation's financial statements. A is not informed of any intended use of the financial statements; but A knows that financial statements, accompanied by an auditor's opinion, are customarily used in a variety of financial transactions by the corporation and that they may be relied upon by lenders, investors . . . and the like . . . . In fact B Company uses the financial statements and accompanying auditor's opinion to obtain a loan from X Bank. Because of A's negligence, he issues an unqualifiedly favorable opinion upon a balance sheet that materially misstates the financial position of B Company and through reliance upon it X Bank suffers pecuniary loss. A is not liable to X Bank.

against defendants for negligent misrepresentation. Sidbec-Dosco alleges that when defendants prepared the audited financial statements for IMC they knew: (1) the statements would be used by IMC to represent its financial condition to creditors who would extend credit on the basis of them; and (2) plaintiff and other creditors would rely upon these statements. These allegations are sufficient to impose upon defendants a duty of care to Sidbec-Dosco under the Restatement approach as we have interpreted and adopted it herein.

In summary we reverse the Court of Appeals' decision that Raritan stated a claim against defendants for negligent misrepresentation. We affirm, for the reasons stated herein, the Court of Appeals' decision that Sidbec-Dosco stated such a claim. The decision below, therefore, insofar as it addressed plaintiffs' claims for negligent misrepresentation, is

Affirmed in part and reversed in part.

Justice WHICHARD did not participate in the consideration or decision of this case.