386 S.E.2d 310

The FIRST NATIONAL BANK OF
BLUEFIELD, a National
Banking Association

v.

Harry Robert CRAWFORD; Crawford
& Graham; and Crawford &
Graham, A.C., Inc.

No. CC991.

Supreme Court of Appeals of
West Virginia.

Nov. 3, 1989.

R. Thomas Czarnik, Pinceton, for The
First Nat. Bank of Bluefield.

J. Greg Goodykoontz, Steptoe & Johnson,
Clarksburg, for Harry Robert Crawford,
Crawford & Graham, a partnership, and
Crawford & Graham, A.C., Inc.

MILLER, Justice:

We accepted this certified question in
order to determine if lack of privity of
contract between an accountant and a bank

is a complete defense to the bank's suit against the accountant for professional negligence in preparing a financial statement.

On July 25, 1986, the First National Bank of Bluefield (the bank) filed suit in the Circuit Court of Mercer County against Harry Robert Crawford, a certified public accountant (the accountant).[1] The complaint alleged that the accountant had been professionally negligent in preparing a financial statement for Erps Construction Co. (Erps) upon which the bank had relied in determining whether to give Erps a loan. In his answer, the accountant asserted the defense of lack of privity.

Following a motion for partial summary judgment by the bank, the parties stipulated: (1) that the bank informed the accountant that it would need the financial statement prior to the October 5, 1984 closing of the loan; (2) that the financial statement was delivered to the bank before the closing date; (3) that the bank alleges that it reasonably relied on the financial statement in making the loan to Erps; and (4) that there was no privity of contract between the bank and the accountant.

■ In an order entered on November 2, 1988, the trial court ruled that in the absence of contractual privity between the parties, the bank could not recover from the accountant. We therefore address the narrow issue of whether lack of privity of contract is an absolute defense in a suit for accounting malpractice.

The majority of courts agree that an accountant can be found liable in the absence of privity of contract. However, the standard for imposition of this liability var-

ies. The minority view was established in *Ultramares Corp. v. Touche*, 255 N.Y. 170, 174 N.E. 441 (1931), the seminal case discussing an accountant's liability. In *Ultramares*, the court, speaking through Chief Judge Cardozo, held that in the absence of privity or a relationship "so close as to approach that of privity," a party could not recover from an accountant. 255 N.Y. at 182–83, 174 N.E. at 446. *Koch Indus., Inc. v. Vosko*, 494 F.2d 713 (10th Cir.1974) (applying Kansas law); *Robertson v. White*, 633 F.Supp. 954 (W.D.Ark.1986) (applying Arkansas law); *First Florida Bank, N.A. v. Max Mitchell & Co., P.A.*, 541 So.2d 155 (Fla.App.1989).[2] Although New York's highest court has declared otherwise, it appears that the *Ultramares* standard was modified in *Credit Alliance Corp. v. Arthur Andersen & Co.*, 65 N.Y.2d 536, 551, 493 N.Y.S.2d 435, 443, 483 N.E.2d 110, 118 (1985), where this rule was announced:

> "Before accountants may be held liable in negligence to noncontractual parties who rely to their detriment on inaccurate financial reports, certain prerequisites must be satisfied: (1) the accountants must have been aware that the financial reports were to be used for a particular purpose or purposes; (2) in the furtherance of which a known party or parties was intended to rely; and (3) there must have been some conduct on the part of the accountants linking them to that party or parties, which evinces the accountants' understanding of that party or parties' reliance." [3]

The most liberal rule was adopted by the New Jersey Supreme Court in *H. Rosenblum, Inc. v. Adler*, 93 N.J. 324, 461 A.2d 138 (1983). After a thorough discussion of

---

1. The suit was also filed against the partnership of Crawford & Graham and against Crawford & Graham, A.C., Inc., a West Virginia corporation which succeeded the former partnership.

2. A number of commentators have questioned the soundness of *Ultramares*. *See, e.g.,* Wiener, *Common Law Liability of the Certified Public Accountant for Negligent Misrepresentation,* 20 San Diego L.Rev. 233 (1983); Besser, *Privity?— An Obsolete Approach to the Liability of Accountants to Third Parties,* 7 Seton Hall L.Rev. 507 (1976); Marinelli, *The Expanding Scope of Accountants' Liability to Third Parties,* 23 Case W.Res.L.Rev. 113 (1971); Seavey, *Mr. Justice*

*Cardozo and the Law of Torts,* 52 Harv.L.Rev. 372 (1939); Solomon, *Ultramares Revisited: A Modern Study of Accountants' Liability to the Public,* 18 DePaul L.Rev. 56 (1968).

3. At least one commentator has suggested that *Credit Alliance* liberalized the holding in *Ultramares. See* Comment, *The Citadel Falls?—Liability for Accountants in Negligence to Third Parties Absent Privity: Credit Alliance Corp. v. Arthur Andersen & Co.,* 59 St. John's L.Rev. 348 (1985). In *Idaho Bank & Trust Co. v. First Bancorp of Idaho,* 115 Idaho 1082, 772 P.2d 720 (1989), the Idaho Supreme Court adopted the New York rule set out in *Credit Alliance.*

the issue,[4] the New Jersey Supreme Court concluded that in the absence of a limitation in the accountant's certificate as to whom the client may disseminate the financial statement, the accountant "has a duty to all those whom that auditor should reasonably foresee as recipients from the company of the statements for its proper business purposes, provided that the recipients rely on the statements pursuant to those business purposes." 93 N.J. at 352, 461 A.2d at 153. (Footnote omitted). *Accord International Mortgage Co. v. John P. Butler Accountancy Corp.,* 177 Cal. App.3d 806, 223 Cal.Rptr. 218 (1986); *Touche Ross & Co. v. Commercial Union Ins. Co.,* 514 So.2d 315 (Miss.1987); *Citizens State Bank v. Timm, Schmidt & Co.,* 113 Wis.2d 376, 335 N.W.2d 361 (1983).

The majority view offers a middle ground and holds that in the absence of privity of contract, an accountant is liable for the negligent preparation of a financial report only to those he knows will be receiving and relying on the report.[5] *See, e.g., Matter of Hawaii Corp.,* 567 F.Supp. 609 (D.Haw.1983) (applying Hawaii law);

*Ingram Indus., Inc. v. Nowicki,* 527 F.Supp. 683 (E.D.Ky.1981) (applying Kentucky law); *Rusch Factors, Inc. v. Levin,* 284 F.Supp. 85 (D.R.I.1968) (applying Rhode Island law); *Badische Corp. v. Caylor,* 257 Ga. 131, 356 S.E.2d 198 (1987); *Ryan v. Kanne,* 170 N.W.2d 395 (Iowa 1969); *Bonhiver v. Graff,* 311 Minn. 111, 248 N.W.2d 291 (1976); *Spherex Inc. v. Alexander Grant & Co.,* 122 N.H. 898, 451 A.2d 1308 (1982); *Raritan River Steel Co. v. Cherry, Bekaert & Holland,* 322 N.C. 200, 367 S.E.2d 609 (1988); *Haddon View Inv. Co. v. Coopers & Lybrand,* 70 Ohio St.2d 154, 436 N.E.2d 212 (1982); *Shatterproof Glass Corp. v. James,* 466 S.W.2d 873 (Tex.Civ.App.1971); *Milliner v. Elmer Fox and Co.,* 529 P.2d 806 (Utah 1974). *Cf. United States v. Arthur Young & Co.,* 465 U.S. 805, 104 S.Ct. 1495, 79 L.Ed.2d 826 (1984) (an independent public accountant owes ultimate allegiance to the corporation's creditors, stockholders, and the investing public); *Brumley v. Touche Ross & Co.,* 123 Ill.App.3d 636, 79 Ill.Dec. 57, 463 N.E.2d 195 (1984) (the test of the scope of the accountant's duty to a third party is

---

**4.** The New Jersey court in *H. Rosenblum,* 93 N.J. at 346–47, 461 A.2d at 149–50, discussed the role of the auditor and made these observations:

"The auditor's function has expanded from that of a watchdog for management to an independent evaluator of the adequacy and fairness of financial statements issued by management to stockholders, creditors, and others. Broad, 'The Progress of Auditing,' 100 *J. Accountancy* 38, 38–39 (1955); Hallett & Collins, 'Auditors' Responsibility for Misrepresentation,' 44 *Wash.L.Rev.* 139, 178 (1968).

\* \* \* \* \* \*

"The two most important qualities of the auditor are the expertise that he brings to the project and the independence with which he performs his task. *See* Wixon & Kell, *Accountants' Handbook* 28.1 (4th ed. 1956). The auditor is not only labeled as independent, but also is expected to be independent in fact. The public accountant must report fairly on the facts whether favorable or unfavorable to the client. *See* 82 *J. Accountancy* 449, 453 (1946). It is generally in management's interest that the financial statements reflect performance in the most favorable light. There is an inherent divergence of interests between management and third persons who will rely upon these statements. Without the auditor's oversight, management might be tempted to tilt certain items in its favor or to commit outright misrepresentation."

**5.** This is the position taken in Section 552 of the Restatement (Second) of Torts (1977):

"(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

"(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

"(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

"(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

"(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons who whose benefit the duty is created, in any of the transactions in which it is intended to protect them."

whether the accountant was acting at the direction or on the behalf of his client to benefit or influence a third party). *See generally* Annot., 46 A.L.R.3d 979 (1972 and Supp.1989).

We believe that the Restatement rule is more appropriate because it imposes a standard of care only to known users who will actually be relying on the information provided by the accountant. This is not a commercially unreasonable rule, nor is it any different from that applied to other professionals who issue opinions or reports. If such a report is materially erroneous, the author may be liable to those persons whom he knows will be relying on it, even in the absence of privity of contract.[6]

 Under this rule, liability is not automatically established by pointing to some error in the accountant's report;

rather, before an accountant can be found liable, it must be shown that there is a material misstatement or omission in his report. The standard of care depends upon generally accepted accounting practices.[7] In *Raritan River Steel*, 322 N.C. at 212, 367 S.E.2d at 616, the North Carolina Supreme Court made this pertinent observation:

"[A]uditors do not control their client's accounting records and processes. B. Ferst, *Basic Accounting for Lawyers* 11 (3d ed. 1975). While, in the final analysis, an auditor renders an opinion concerning the accuracy of his client's records, he necessarily relies, in some measure, on the client for the records' contents." [8]

 Moreover, courts recognize that because there are several types of account-

---

**6.** *See, e.g., Howarth v. Pfeifer*, 443 P.2d 39 (Alaska 1968) (purchaser's insurance agent may be liable for negligently advising vendor to cancel insurance); *Hardy v. Carmichael*, 207 Cal.App. 218, 24 Cal.Rptr. 475 (1962) (termite company hired by vendor liable to purchaser for negligent report); *Lucas v. Hamm*, 56 Cal.2d 583, 15 Cal.Rptr. 821, 364 P.2d 685 (1961), *cert. denied*, 368 U.S. 987, 82 S.Ct. 603, 7 L.Ed.2d 525 (1962) (attorney may be liable to beneficiaries for negligent preparation of will); *Robert & Co. Associates v. Rhodes-Haverty Partnership*, 250 Ga. 680, 300 S.E.2d 503 (1983) (engineer liable to third party purchaser for incorrect report on condition of building); *Chun v. Park*, 51 Haw. 462, 462 P.2d 905 (1969) (seller's title company may be liable to buyer for negligent title search); *Stotly v. Hester*, 92 N.M. 26, 582 P.2d 403 (App.), *cert. denied*, 92 N.M. 180, 585 P.2d 324 (1978) (seller's real estate appraiser may be liable to buyer); *Collins v. Binkley*, 750 S.W.2d 737 (Tenn.1988) (vendor's attorney found liable to purchaser for preparing defective deed); *Cook Consultants, Inc. v. Larson*, 700 S.W.2d 231 (Tex. Civ.App.1985) (builder's surveyor liable to purchaser for inaccurate survey).

We have several cases involving attorney malpractice, but only with regard to statute-of-limitations questions. *E.g., Family Savings & Loan, Inc. v. Ciccarello*, 157 W.Va. 983, 207 S.E.2d 157 (1974); *Nellas v. Loucas*, 156 W.Va. 77, 191 S.E.2d 160 (1972). In other cases involving professional malpractice, the court did not discuss the privity issue. *E.g., Wells v. Tennant*, 180 W.Va. 166, 375 S.E.2d 798 (1988) (discussed land surveyor malpractice); *Chamberlaine & Flowers, Inc. v. McBee*, 177 W.Va. 755, 356 S.E.2d 626 (1987) (a vendor's real estate agent could be held liable to the purchaser for a material misrepresentation as to the condition of a house); *Brammer v. Taylor*, 175 W.Va. 728,

338 S.E.2d 207 (1985) (beneficiary sued a bank that had negligently prepared a codicil).

**7.** Pursuant to W.Va.Code, 30–9–1 (1989), the West Virginia Board of Accountancy can promulgate rules governing the professional conduct of accountants. C.S.R. § 1–1–22.2 (1982) sets forth these standards:

"*Representations in financial statements.*— In expressing an opinion on representations in financial statements which he has examined a certified public or public accountant may be held guilty of an act discreditable to the profession if:

"(a) He fails to disclose a material fact known to him which is not disclosed in the financial statements but disclosure of which is necessary to make the financial statement not misleading; or

"(b) He fails to report any material misstatement known to him to appear in the financial statement; or

"(c) He is materially negligent in the conduct of his examination or in making his report thereon; or

"(d) He fails to acquire sufficient information to warrant expression of an opinion, or his exceptions are sufficiently material to negative the expression of an opinion; or

"(e) He fails to direct attention to any material departure from generally accepted accounting principles or to disclose any material omission of generally accepted auditing procedure applicable in the circumstances."

**8.** The North Carolina court further explained in note 1, 322 N.C. at 212–13, 367 S.E.2d at 616:

"The description of the auditing process by the American Institute of Certified Public Ac-

ing audits, there may be differing degrees of professional investigation required of the accountant.[9] The identification of the type of audit performed is customarily set out in the accountant's report which will include a limiting statement or disclaimer.[10] With two general exceptions, courts have recognized the validity of such statements in weighing the accountant's duty.[11] First, the court will look to the nature of the accounting work contracted. As explained in the leading case of *Ryan v. Kanne,* 170 N.W.2d at 404: "Their liability must be dependent on their undertaking not their rejection of dependability. They cannot escape liability for negligence by a general statement that they disclaim its reliability." *See also Ashland Oil, Inc. v. Arnett,* 875 F.2d 1271 (7th Cir.1989); *Seedkem, Inc. v. Safranek,* 466 F.Supp. 340 (D.Neb.1979); *Coleco Indus., Inc. v. Berman,* 423 F.Supp. 275 (E.D.Pa.1976); *Badische Corp. v. Cay-*

countants in its Statement on Auditing Standards reveals the degree to which auditors are unable to control certain variables:

An examination made in accordance with generally accepted auditing standards is subject to the inherent limitations of the auditing process.... [T]he auditor's examination, based on the concept of selective testing of the data being examined, is subject to the inherent risk that material errors or irregularities, if they exist, will not be detected. The risk that material errors or irregularities will not be detected is increased by the possibility of management's override of internal controls, collusion, forgery, or unrecorded transactions. Certain acts, such as collusion between client personnel and third parties or among management or employees of the client, may result in misrepresentations being made to the auditor or in the presentation to the auditor of falsified records or documents that appear truthful and genuine. Unless the auditor's examination reveals evidential matters to the contrary, his reliance on the truthfulness of certain representations and on the genuineness of records and documents obtained during his examination is reasonable.... Further, the auditor cannot be expected to extend his auditing procedures to seek to detect unrecorded transactions unless evidential matter obtained during his examination indicates that they may exist. For example, an auditor ordinarily would not extend his auditing procedures to seek failures to record the receipt of cash from unexpected sources.

1 Prof.Stand. [AICPA] (CCH) AU §§ 327.11–.12 (1982)."

**9.** As in most cases involving the question of professional malpractice, the issue is ordinarily resolved through expert testimony. *See Margolies v. Landy & Rothbaum,* 136 Ill.App.3d 635, 91 Ill.Dec. 280, 483 N.E.2d 626 (1985); *Bonhiver v. Graff, supra; Kemmerlin v. Wingate,* 274 S.C. 62, 261 S.E.2d 50 (1979); *Blue Bell, Inc. v. Peat, Marwick, Mitchell & Co.,* 715 S.W.2d 408 (Tex. Civ.App.1986). *Cf. Costa v. Neimon,* 123 Wis.2d 410, 366 N.W.2d 896 (1985) (expert testimony as to value of property supported jury's finding that real estate appraiser's representation of property value was untrue). We have recognized the necessity of expert testimony in professional malpractice cases, and the well-settled

exception to the rule that if the lack of professional skill is obvious, expert testimony is not needed. This point was succinctly stated in Syllabus Point 2 of *Howell v. Biggart,* 108 W.Va. 560, 152 S.E. 323 (1930): "It is the general rule that want of professional skill can be proved only by expert witnesses. However, cases may arise where there is such want of skill as to dispense with expert testimony." *See also Totten v. Adongay,* 175 W.Va. 634, 337 S.E.2d 2 (1985).

**10.** In the present case, attached to the accountant's report was a letter which contained these statements:

"We have reviewed the accompanying balance sheets of Erps Construction Co., Inc. as of July 31, 1984, and October 31, 1983, and the related statements of income and retained earnings, changes in financial position and additional information for the nine months ended July 31, 1984, in accordance with standards established by the American Institute of Certified Public Accountants. All information included in these financial statements is the representation of the management of Erps Construction Co., Inc.

"A review consists principally of inquiries of Company personnel and analytical procedures applied to financial data. It is substantially less in scope than an examination in accordance with generally accepted auditing standards, the objective of which is the expression of an opinion regarding the financial statements taken as a whole. Accordingly, we do not express such an opinion.

"Based on our review, we are not aware of any material modifications that should be made to the accompanying financial statements in order for them to be in conformity with generally accepted accounting principles."

**11.** *E.g., United States v. Natelli,* 527 F.2d 311 (2d Cir.1975), *cert. denied,* 425 U.S. 934, 96 S.Ct. 1663, 48 L.Ed.2d 175 (1976); *Seedkem, Inc. v. Safranek,* 466 F.Supp. 340 (D.Neb.1979); *Badische Corp. v. Caylor, supra; Ryan v. Kanne, supra; Bonhiver v. Graff, supra; Spherex, Inc. v. Alexander Grant & Co., supra; Robert Wooler Co. v. Fidelity Bank,* 330 Pa.Super. 523, 479 A.2d 1027 (1984).

*lor, supra; Bonhiver v. Graff, supra; Spherex, Inc. v. Alexander Grant & Co., supra.* Obviously, under this exception, if the accountant has been hired to do a full audit, he could not limit his liability by a disclaimer that his report should be treated only as an unaudited statement.

■ The second exception is that regardless of the nature of the work undertaken, if the accountant actually discovers a materially false matter in the client's books and fails to disclose it, he may be subject to liability. *See United States v. Natelli,* 527 F.2d 311 (2d Cir.1975), *cert. denied,* 425 U.S. 934, 96 S.Ct. 1663, 48 L.Ed.2d 175 (1976); [12] *Bonhiver v. Graff, supra.*

In answering this certified question, we do not express an opinion on the underlying merits of the claim. The question having been answered, we dismiss the case from our docket by remanding it to the lower court.

Certified question answered, case remanded and dismissed.

---

**12.** The court in *Natelli,* 527 F.2d at 320, explains the basis for this rule:

"In the ordinary case involving an unaudited statement, the auditor would not be chargeable simply because he failed to discover the invalidity of booked accounts receivable, inasmuch as he had not undertaken an audit with verification. In this case, however, Natelli 'knew' the history of post-period bookings and the dismal consequences later discovered. Was he under a duty in these circumstances to object or to go beyond the usual scope of an accountant's review and insist upon some independent verification? The American Institute of Certified Public Accountants, Statement of Auditing Standards No. 1—Codification of Auditing Standards and Procedures (1972), 1 CCH AICPA Professional Standards § 516.00, recognizes that 'if the certified public accountant concludes in the basis of facts known to him that unaudited financial statements with which he may become associated are not in conformity with generally ac-

cepted accounting principles, *which include adequate disclosure,* he should insist ... upon appropriate revision ...' (emphasis added).

"We do not think this means, in terms of professional standards, that the accountant may shut his eyes in reckless disregard of his knowledge that highly suspicious figures, known to him to be suspicious, were being included in the unaudited earnings figures with which he was 'associated' in the proxy statement."

*Natelli* involved a prosecution under Section 32(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78ff(a). This provision provides penalties for statements which are "false or misleading with respect to any material fact" in connection with SEC filings. Under federal statutes applicable to public corporations, civil remedies are also available against an accounting firm in the absence of privity. *See generally Herman & MacLean v. Huddleston,* 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983).