Jennifer NEWTON, Plaintiff,

v.

**LAT PURSER AND ASSOCIATES, INC., Defendant.**

**No. 3:92–CV–126–P.**

United States District Court, W.D. North Carolina, Charlotte Division.

Jan. 12, 1994.

F. Lee Weaver, Weaver, Bennett & Bland, Matthews, NC, and Michael A. Sheely, Sheely & Young, Charlotte, NC, for plaintiff.

Brien D. Stockman, Blair, Conaway, Bograd & Martin, Charlotte, NC, for defendant.

## MEMORANDUM OF DECISION AND ORDER

ROBERT D. POTTER, District Judge.

**THIS MATTER** is before the Court on Defendant's motion to dismiss or for summary judgment, filed July 2, 1993. Plaintiff responded to the summary judgment motion in a brief filed August 26, 1993. On September 10, 1993, Defendant filed its reply to Plaintiff's response. On September 14, 1993, Plaintiff's surreply brief was filed. The Court has carefully reviewed Defendant's motion, the respective briefs and exhibits filed by the parties, and the relevant law. Based upon this review, the Court makes the following findings of fact and conclusions of law.

## PROCEDURAL AND FACTUAL SUMMARY

Plaintiff's complaint contains three counts. Count one states a claim for wrongful discharge in violation of N.C.G.S. § 143–422.2. Counts two and three are pled alternatively to each other and both alternatively to the first. The second count alleges Defendant committed gender discrimination also in violation of N.C.G.S. § 143–422.2. The third count states a claim for gender discrimination arising under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e–2. The Court held a hearing in this matter and heard oral argument.

Plaintiff is a female certified public accountant and Defendant's (LPA) former employee. Plaintiff began her employment with LPA as a temporary accountant on June 21, 1990 and was eventually made a permanent employee on September 17, 1990.

Beginning in December of 1990, LPA officials discussed the feasibility of eliminating two company positions: a computer operator and the assistant controller (Plaintiff's former job). The computer operator position was held by a male. LPA rated his performance during the time prior to Plaintiff's discharge as "competent." He remains employed by LPA. Plaintiff held the assistant to the controller job, which was eliminated, and enjoyed a higher job rating.

From April 1, 1991 to April 5, 1991 Plaintiff was hospitalized due to pregnancy related ailments. Defendant, through LPA's Accounting Section Chief and Plaintiff's immediate supervisor Mr. Robert Monaghan, became aware of Plaintiff's pregnancy when she told him, while in the hospital, she was pregnant. According to Plaintiff's affidavit, Monaghan responded that "she should consider whether she wanted to work after the birth of her child since having a child would be a drastic change." Plaintiff's Exhibit 1, p. 4 ¶ 11, Affidavit of Jennifer Newton.

Plaintiff's work performance was declared "commendable" in a March 19, 1991 LPA evaluation, which Plaintiff reviewed and signed on April 8, 1991, her first day at work after her hospitalization. The evaluation also acknowledged that a weakness in her performance centered upon "several health related absences—[which] may affect reliability as responsibilities increase." Plaintiff's Exhibit 4, p. 6. In a note to the file, Monaghan included mention of a "sequence of events around the phase out of the assistant controller position" referencing three entries of Plaintiff's pregnancy related absences from work. Plaintiff's Exhibit 13. Plaintiff believes these comments were related to her pregnancy related hospitalization.

On June 20, 1991, Plaintiff was terminated when Mr. Monaghan notified her that LPA had decided to eliminate her position. Plaintiff was given a letter of recommendation which stated she was terminated for economic reasons.

## ANALYSIS

The Court will treat the instant motion relative to counts one and two, the § 143–422.2 claims, as a motion to dismiss. As to count three, the Title VII claim, the Court will review this motion as one for summary judgment because in evaluating it, the Court has relied upon materials outside of the pleadings.

### 1) The § 143–422.2 Claims

■ Initially, the Court must determine whether it should properly consider and hear the N.C.G.S. § 143–422.2 claims. The Court will assume, without deciding that this statute creates a private state law cause of action for the forms of employment discrimination embraced by it, rather than a mere policy statement. Given this assumption, the Court believes it must abstain from hearing both counts one and two and dismiss them under *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).[1]

N.C.G.S. § 143–422.2 provides,

Legislative declaration.—It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers

1. The Western District of North Carolina has been less than clear on whether N.C.G.S. § 143–422.2 creates a private cause of action for discriminatory employment practices. In the first of a series of cases concerning N.C.G.S. § 143–422.2, Judge James McMillan noted the, "statute does not *prohibit* discrimination ... it merely declares the 'public policy' of North Carolina." *Spangnuolo v. Whirlpool, Corp.*, 467 F.Supp. 364, 365 (W.D.N.C.1979) (McMillan, J.) (emphasis in original). This Court has held, without deciding whether N.C.G.S. § 143–422.2 states a private cause of action, that a plaintiff who has a Title VII remedy for a wrong may not avail herself also of an additional N.C.G.S. § 143–422.2 claim for the identical wrong. *Frazier v. First Union Nat. Bank*, 747 F.Supp. 1540, 1553 (W.D.N.C. 1990) (Potter, J.).

It has also been held in the Western District of North Carolina that an employee terminated in bad faith for refusing to violate N.C.G.S. § 143–422.2's policy against racially motivated hiring decisions, "may proceed with [a] *Coman v. Thomas Mfg. Co., Inc.*, 325 N.C. 172, 381 S.E.2d 445 (1989) claim, notwithstanding the availability of a *federal* remedy under Title VII." *Mayse v. Protective Agency, Inc.*, 772 F.Supp. 267 (W.D.N.C.1991). (McMillan, J.) (emphasis in original). Finally, it has been held that "N.C.G.S. § 143.422.2 merely contains a statement of policy, and does not provide for a private right of action or remedies for private plaintiffs in employment discrimination cases." *Smith v. Apple Computer, Inc.*, No. 3:92CV93–MU (W.D.N.C.1993) (Mullen, J.).

In any case, the Court believes the issue of § 143–422.2's actionability is moot in federal court until either the courts of North Carolina, or its General Assembly provide some definitive guidance concerning the elements, burdens of production and proof, and so forth of such a cause of action.

which regularly employ 15 or more employees.

By itself, the plain language of this statute provides no guidance concerning the requisite elements to establish the *prima facie* case of a claim under it. The Court can find no basis in the decisional or statutory law of North Carolina for determining even such crucial matters as the burden of proof, which party is to bear that burden, whether there is a defense to such a claim flowing from § 143–422.2, or even whether damages may be compensatory only or punitive. For example, the statute itself does not indicate whether the plaintiff must prove discriminatory intent on behalf of an employer or whether proving a statistical disparity alone is adequate to make out a *prima facie* claim. Similarly, the Court knows of no North Carolina court decisions construing this statute which could provide it with guidance concerning these essential questions and Plaintiff directs it to none.

Plaintiff essentially conceded this point at oral argument. The Court asked Plaintiff's counsel if he could point out a North Carolina case which outlines even the elements of a *prima facie* case for this potential private cause of action. His reply was no, but that he was unexplainably sure that it "tracked a Title VII cause of action." This, of course, begs the question and if true leaves the Court wondering why the North Carolina legislature would bother enacting a law identical to that provided for by federal law. Consequently, this Court has before it a statute, the meaning of which is largely mysterious. In this posture, a host of federalism problems are presented; most notably the impropriety of a Federal District Court determining the standards of law to control a state enacted statute.

The Supreme Court in *Burford* discussed the form of federal abstention requiring outright dismissal of state law claims that involve unresolved, important, questions of state law. *Burford* abstention is implicated where a case "involve[s] complex issues of unresolved state law, the resolution of which would be disruptive of state efforts to establish coherent policy with respect to a matter of substantial public concern," a federal court should dismiss the action entirely. *Zablocki v. Redhail,* 434 U.S. 374, 379, 98 S.Ct. 673, 677, 54 L.Ed.2d 618 (1978), *see also, Tennyson v. Gas Sev. Co.,* 506 F.2d 1135, 1143 (10th Cir.1974). This case fits squarely within *Burford.*

█ Clearly, if § 143–422.2 is actionable, then Plaintiff has an adequate remedy in state court and her claims arising under § 143–422.2 present no questions of federal law. She may simply bring her claims under state law in state court without the Title VII claim if she wishes to avail herself of the remedies afforded her by the North Carolina legislature. Therefore, the Court must, under *Burford,* dismiss counts one and two.[2]

### 2) The Title VII Claim

The Court does not, however, believe count three is amenable to dismissal or summary judgment. Federal Rule of Civil Procedure 56(c) provides,

> ... judgment ... shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c) (West 1993).

Summary judgment must be granted when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Id., Barwick v. Celotex Corp.,* 736 F.2d 946, 958 (4th Cir.1984). To attain summary judgment, the movant bears an initial burden of demonstrating no genuine issues of material fact are present. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party who

---

**2.** The Court notes that, 28 U.S.C. § 1367(c) also permits district courts to refrain from exercising supplemental jurisdiction conferred by § 1367(a) over a claim "so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy" if the claim either "raises a novel or complex issue of State law" or "in exceptional cases, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(1) and (4). That statute would also permit this Court to dismiss counts one and two.

must point out specific facts which create disputed factual issues. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In evaluating a summary judgment motion, district courts must consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of the non-moving party. *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Those facts which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

An issue of material fact is genuine when, "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice. A trial, after all, is not an entitlement. It exists to resolve what reasonable minds could recognize as real factual disputes." *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence from the entire record could not lead a rational fact finder to rule for the non-moving party. *Matsushita Electric Industrial Co.,* 475 U.S. at 587, 106 S.Ct. at 1356, *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53 (1986).

█ The Court finds there are factual disputes presented in the remaining Title VII count in need of resolution by a trial. Specifically, Plaintiff points to Mr. Monaghan's admonition to her that she should fully consider the impact of parenthood on her decision to return to work and his file memorandum mentioning her pregnancy related absenteeism in connection with Defendant's decision to eliminate her position. Plaintiff claims these facts, when taken in the light most favorable to her, permit the inference that her position was eliminated because of her gender and a trial is necessary to enable the finder of fact to weigh them in light of all the facts and to make credibility judgments. The Court agrees. Therefore, Defendant's summary judgment motion must be denied.

█ The Court notes that the Title VII claim is the only remaining claim in this case. Title VII's remedies are equitable in nature and as such are not entitled to a jury trial under the Seventh Amendment. *Swentek v. USAIR, Inc.,* 830 F.2d 552, 559 (4th Cir.1987) (Title VII claim was an equitable claim where the judge is the fact finder). Therefore, the Court will remove this case from its civil jury trial docket and place it on its non-jury docket.

**NOW, THEREFORE, IT IS ORDERED** that Defendant's motion to dismiss counts one and two be, and hereby is, **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment as to count three be, and hereby is, **DENIED.**

**IT IS FURTHER ORDERED** that the clerk remove this case from the Court's jury trial docket and place it instead on its non-jury trial docket.

### *JUDGMENT*

**THIS MATTER** is before the Court on Defendant's motion to dismiss counts one and two of Plaintiff's complaint, filed July 2, 1993.

**NOW THEREFORE,** in accordance with the Memorandum of Decision and Order filed simultaneously with this Judgment, **IT IS ORDERED, ADJUDGED, AND DECREED:**

1) That counts one and two of Plaintiff's complaint be, and hereby are, **DISMISSED with prejudice.**

2) That Plaintiff shall recover nothing from Defendant as to counts one and two.

3) That each party shall bear its own costs.