GARY LAWRENCE WALKER, Plaintiff v. TOWN OF STONEVILLE,
NORTH CAROLINA, Defendant

No. COA10-278

(Filed 19 April 2011)

**1. Fraud— negligent misrepresentation—erroneous grant of directed verdict and JNOV**

The trial court erred by granting the town's motions for directed verdict and JNOV because plaintiff offered substantial evidence to support the jury's negligent misrepresentation verdict. By inquiring with proper town officials, plaintiff exercised reasonable diligence in attempting to determine how he could return to work with the town without jeopardizing his retirement benefits. Further, plaintiff presented substantial evidence that he justifiably relied on the town's representations.

**2. Public Officers and Employees— wrongful discharge—regular employee—payroll method**

The trial court erred by directing verdict against plaintiff on his wrongful discharge claim. Plaintiff offered substantial evidence that the town regularly employed 15 or more employees based on the payroll method as required by N.C.G.S. § 143-422.2.

**3. Criminal Law— denial of requested instruction—denied opportunity to investigate or could have learned through reasonable diligence**

Although defendant contended that the trial court erred by refusing his request to instruct the jury that plaintiff must prove that he was denied the opportunity to investigate or that he could not have learned the true facts by exercise of reasonable diligence, defendant failed to demonstrate that the trial court's instruction likely misled the jury.

**4. Jury— verdict sheet—properly reflected material controversies involved**

The trial court did not improperly submit an insufficient verdict sheet to the jury in a negligent misrepresentation case. The issues submitted properly reflected the material controversies involved.

Appeal by Plaintiff from order and judgment entered 25 June 2009 by Judge James M. Webb in Rockingham County Superior Court.

WALKER v. TOWN OF STONEVILLE

[211 N.C. App. 24 (2011)]

Cross-appeal by Defendant from order entered 23 March 2009 by Judge John O. Craig, III and order entered 28 May 2009 by Judge James M. Webb in Rockingham County Superior Court. Heard in the Court of Appeals 11 October 2010.

*Elliot Pishko Morgan, P.A., by Robert M. Elliot, for Plaintiff.*

*Gray King Chamberlin & Martineau, LLC, by Elizabeth A. Martineau and Susan M. Hill, for Defendant.*

STEPHENS, Judge.

This appeal addresses, in its paramount legal issues, the sufficiency of evidence to support a jury verdict in favor of Plaintiff Gary Lawrence Walker ("Plaintiff") on his negligent misrepresentation claim against Defendant Town of Stoneville ("Defendant" or "Town") and the statutory construction of the law prohibiting wrongful discrimination in the workplace. But this case involves much more than just these primary legal issues; this case raises, in its essence, issues of competency, trust, accountability, and fundamental fairness.

For the reasons stated below, we hold that the trial court erred in setting aside the jury's verdict on Plaintiff's negligent misrepresentation claim and in directing a verdict for Defendant on Plaintiff's wrongful discharge claim.

*I. Procedure*

On 19 October 2007, Plaintiff filed this action against the Town for negligent misrepresentation and breach of contract, seeking damages for the loss of Plaintiff's retirement benefits. Defendant filed an answer on 11 January 2008.

On 18 August 2008, Plaintiff filed a Supplemental and Amended Complaint adding claims for wrongful discharge based on age discrimination. Defendant filed an answer on 19 September 2008 and an amended answer on 25 September 2008.

On 14 January 2009, Defendant filed a motion for summary judgment. By order entered 23 March 2009, following a hearing, the Honorable John O. Craig, III granted Defendant's motion as to Plaintiff's contract claims and one of Plaintiff's wrongful discharge claims, and denied Defendant's motion as to Plaintiff's negligent misrepresentation claim and remaining wrongful discharge claim.

These remaining claims came on for trial before a jury starting 19 May 2009, the Honorable James M. Webb presiding. At the conclusion of Plaintiff's evidence, Defendant made an oral motion for directed verdict on all of Plaintiff's claims. The court granted Defendant's motion on Plaintiff's wrongful discharge claim and took Defendant's motion on Plaintiff's negligent misrepresentation claim under advisement. At the close of all the evidence, Defendant made an oral motion for directed verdict on Plaintiff's negligent misrepresentation claim, which the trial court also took under advisement.

The matter was submitted to the jury. On 28 May 2009, the jury returned a verdict finding Defendant liable for negligent misrepresentation and awarding Plaintiff $170,008.13 in damages from Defendant. After the jury's verdict was announced, Defendant made an oral motion for judgment notwithstanding the verdict ("JNOV"). The trial court set Defendant's motions for directed verdict and JNOV for hearing during the court's 15 June 2009 civil term.

Defendant's motions were heard on 16 June 2009. At the conclusion of the hearing, the trial court found that the evidence presented at trial was "insufficient to justify a verdict for [] Plaintiff as a matter of law[.]" Thus, by "Order and Judgment" entered 25 June 2009, the trial court allowed Defendant's motion for directed verdict at the close of all the evidence,[1] which the court had taken under advisement before submitting the case to the jury, and Defendant's post-trial motion for JNOV, and entered judgment for Defendant.

Plaintiff filed notice of appeal on 2 July 2009, challenging Judge Webb's 25 June 2009 order and judgment. Defendant filed notice of cross-appeal on 16 July 2009, challenging Judge Craig's 23 March 2009 order and Judge Webb's denial of Defendant's written requests for special jury instructions and issues to be submitted to the jury.

## II. Evidence

From 1968 through March 1994, Plaintiff was employed by the Eden Police Department of the City of Eden, North Carolina. Plaintiff started as a patrol officer, and during his 26 years of service, moved through the ranks to ultimately become a lieutenant, supervising seven other police officers. While employed by the City of Eden, Plaintiff was enrolled as a member of the North Carolina Local

---

1. Although the written order originally allowed "Defendant's Motion for Directed Verdict at the close of Plaintiff's evidence," this language was deleted by Judge Webb.

Governmental Employees' Retirement System (LGERS),[2] which is administered by the State Retirement System through local governmental employers such as the City of Eden and the Town of Stoneville. Eden's Finance Officer, Margie Blackstock, enrolled Plaintiff in LGERS when he started working for Eden. Plaintiff received periodic statements from the State Retirement System regarding his retirement account but, otherwise, had no contact with the State Retirement System during his employment.

At age 55, after more than 25 years of service, Plaintiff decided to retire. Because of his age at retirement and his years of service, Plaintiff was entitled to full retirement benefits. Plaintiff talked to Ms. Blackstock, who explained to Plaintiff his rights regarding his retirement benefits and provided Plaintiff with the information he needed to file for retirement. With Ms. Blackstock's assistance, Plaintiff filled out an application for retirement on 10 January 1994 for his retirement benefits to begin in April 1994. Ms. Blackstock sent the application to LGERS. Plaintiff retired 1 April 1994 and began receiving monthly retirement benefits.

Following his retirement, Plaintiff's son, a sergeant with the Town of Stoneville's Police Department, informed Plaintiff that the police department was short-handed and needed some extra help. Plaintiff spoke with Police Chief Garrison and informed her that he was willing to work for the Town as long as his work did not jeopardize his retirement benefits. Chief Garrison referred Plaintiff to the Town's Finance Officer, Amy Winn, who administered LGERS for the Town.

Plaintiff went to see Ms. Winn and told her that he was interested in working for the Town only if he could continue to receive his retirement benefits. Ms. Winn researched some information on her computer and told Plaintiff that he could work for the Town without jeopardizing his retirement benefits as long as three conditions were met: (1) that he not receive regular employee benefits from the Town; (2) that he not be enrolled as an active member of LGERS; and (3) that he not receive compensation exceeding the maximum compensation established yearly by LGERS.

Based on the information he received from Ms. Winn, Plaintiff agreed to work for the Town under the following conditions: (1) Plaintiff received no benefits, *i.e.*, he received no vacation, holiday leave, or other benefits which "regular" employees for the Town

---

2. LGERS is a division of the Department of State Treasurer, Retirement Systems Division ("State Retirement System").

received; (2) Plaintiff was not enrolled in LGERS; and (3) Plaintiff received only the statutory maximum salary provided under N.C. Gen. Stat. § 128-24(5)c ("salary cap").

Plaintiff initially worked sporadic hours, filling in as needed. Less than a year later, however, Plaintiff was asked to work more regular hours, and Plaintiff assumed a position requiring approximately 42 hours per week. On 5 February 1997, Plaintiff was appointed the Town's police chief. He served in that position until 3 April 2007. During this time, the Town still considered Plaintiff to be a part-time employee with no benefits.

On a yearly basis, the Town Administrator, Bob Wyatt, and/or the Town Finance Officer, Ms. Winn and later Penny French, would calculate how much Plaintiff could earn during the year under the salary cap and set his salary accordingly. Mr. Wyatt or Ms. Winn would tell Plaintiff what his salary for the upcoming year would be or write Plaintiff's salary on a note and give it to him. The Town's budget each year reflected the overall salary of the police chief, which did not exceed the salary cap established by LGERS.

During his years of employment with the Town, Plaintiff was never informed that the North Carolina General Statutes imposed a limitation on the number of hours he could work without affecting his retirement benefits. Specifically, Plaintiff was never informed by the Town that employees who work over 1,000 hours in a year must become members of LGERS, which ends their eligibility for retirement benefits. Mr. Wyatt was unaware of the 1,000-hour rule. Ms. Winn believed that Plaintiff would continue to receive his retirement benefits as long as he stayed under the salary cap, and Ms. Winn never enrolled Plaintiff in LGERS. When Shirley Price took over as the Town Finance Officer on 3 April 1997, Ms. Price was also unaware of the 1,000-hour rule.[3]

In the fall of 2006, the State Retirement System became aware of the nature of the Town's compensation arrangement with Plaintiff. Through communications with the Town, the State Retirement System concluded that Plaintiff was working in excess of 1,000 hours per year and, thus, was receiving retirement benefits in violation of the law. Based on that information, the State Retirement System immediately terminated Plaintiff's eligibility for retirement benefits and informed him that he was required to reimburse LGERS

---

3. Ms. Price only became aware of the rule when she was deposed in this case.

$174,283.37 for the overpayment of retirement benefits. Additionally, the State Retirement System determined that Plaintiff should have been enrolled as a member of LGERS, and that he would be required to pay LGERS the contributions to the retirement system which should have been deducted from his pay.

During the fall of 2006, the Town drafted an "agreement" indicating that it would pay Plaintiff for more than 2,000 hours of work for which he had not been compensated. The Town Council approved the "agreement." The Mayor of Stoneville signed the document on behalf of the Town, and Plaintiff signed the document as well.[4] When Plaintiff retained legal counsel, counsel informed the Town that the "agreement" was void for lack of consideration. Plaintiff's counsel wrote a letter to the Town stating his position that the Town would be liable for any amounts owed by Plaintiff to LGERS.

As a result of the State Retirement System's decision to terminate Plaintiff's eligibility for retirement benefits and demand payment from him of $174,283.37,[5] the Town enrolled Plaintiff in LGERS and began treating him as a regular employee as of January 2007. Plaintiff continued to serve as the Town's police chief until 3 April 2007 when the Town demoted him to the position of patrol officer. Plaintiff was 68 years old at the time.

The Town Council meeting minutes of 3 April 2007 reflect that Plaintiff was retiring. However, at no time had Plaintiff given notice of his intent to retire, particularly in light of the LGERS decision to stop his retirement benefits and collect all the money paid to Plaintiff for the prior 12-year period. Plaintiff learned of his demotion from the Town Administrator, Kevin Baughn, the day after the Town Council meeting.

Plaintiff continued to serve as a patrol officer until 10 October 2007, when the Town suspended him without pay due to an alleged issue concerning a credit of sick leave on his time sheet. Plaintiff informed the acting police chief that the credit had been authorized by the Town. The Town asked the State Bureau of Investigation ("SBI") to investigate. At that time, Mr. Baughn and the police chief informed Plaintiff that if he was cleared in the investigation, he would

---

4. Plaintiff was not represented by counsel at this point.

5. Plaintiff contested the State Retirement System's position. Although this Court was "very distressed and troubled that [Plaintiff] must reimburse the retirement benefits paid to him by [the State Retirement System,]" ultimately, this Court affirmed the State Retirement System's decision. *Walker v. Dep't of State Treasurer*, —— N.C. App. ——, ——, —— S.E.2d ——, —— (2010).

be reinstated with back pay. Although Plaintiff was cleared by the SBI inquiry, he remained on suspension without pay. In February 2008, Plaintiff received a letter informing him that his employment with the Town was terminated, effective 6 February 2008.

### III. Discussion

### A. Plaintiff's Claims

### 1. Negligent Misrepresentation

**[1]** Plaintiff first argues that the trial court erred in granting the Town's motions for directed verdict and JNOV because Plaintiff offered substantial evidence to support the jury's negligent misrepresentation verdict in his favor. We agree.

The question presented by the Town's directed verdict motion is whether the evidence, considered in the light most favorable to Plaintiff, is sufficient to take the case to the jury and to support a verdict for Plaintiff. *Henderson v. Traditional Log Homes, Inc.*, 70 N.C. App. 303, 306, 319 S.E.2d 290, 292, *disc. review denied*, 312 N.C. 622, 323 S.E.2d 923 (1984). If there is more than a scintilla of evidence "to support [Plaintiff's] *prima facie* case in all its constituent elements[,]" the motion for directed verdict should be denied. *Douglas v. Doub*, 95 N.C. App. 505, 511, 383 S.E.2d 423, 426 (1989). A JNOV motion is "essentially a renewal of a motion for directed verdict[.]" *Smith v. Price*, 74 N.C. App. 413, 418, 328 S.E.2d 811, 815 (1985), *aff'd in part, rev'd in part on other grounds*, 315 N.C. 523, 340 S.E.2d 408 (1986). On appeal, we apply the same standard of review as we employ to review a directed verdict motion. *N. Nat'l Life Ins. Co. v. Lacy J. Miller Machine Co.*, 311 N.C. 62, 69, 316 S.E.2d 256, 261 (1984).

"North Carolina expressly recognizes a cause of action in negligence based on negligent misrepresentation." *Hunter v. Guardian Life Ins. Co. of Am.*, 162 N.C. App. 477, 483, 593 S.E.2d 595, 600 (citation and quotation marks omitted), *disc. review denied*, 358 N.C. 543, 579 S.E.2d 48 (2004). "It has long been held in North Carolina that '[t]he tort of negligent misrepresentation occurs when (1) a party justifiably relies, (2) to his detriment, (3) on information prepared without reasonable care, (4) by one who owed the relying party a duty of care.' " *Simms v. Prudential Life Ins. Co. of. Am.*, 140 N.C. App. 529, 532, 537 S.E.2d 237, 240 (2000) (*quoting Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 206, 367 S.E.2d 609, 612 (1988), *rev'd on other grounds*, 329 N.C. 646, 407 S.E.2d 178 (1991)), *disc. review denied*, 353 N.C. 381, 547 S.E.2d 18 (2001).

The Town concedes that "there is no doubt that [it] had a duty toward Plaintiff with regard to providing [P]laintiff accurate information regarding his questions about the State Retirement System[.]" It is also not in dispute that Plaintiff did not receive accurate information from the Town concerning the conditions under which Plaintiff could work for the Town without jeopardizing his retirement benefits. Moreover, as a result of Plaintiff's reliance on the information he received from the Town, Plaintiff (1) worked full-time for approximately 12 years for a salary which was well below the reasonable and customary pay received by police officers in North Carolina, (2) is required to reimburse the State Retirement System $174,283.37 for benefits wrongfully paid to him, (3) is required to make contributions to the LGERS system for all the years he was not enrolled in the system, and (4) has been embroiled in this legal battle since 2006. It is thus unassailable that Plaintiff's reliance on the information was to his detriment. Accordingly, the contested issue on appeal concerning Plaintiff's negligent misrepresentation claim is whether Plaintiff offered sufficient evidence of justifiable reliance.

Justifiable reliance requires actual reliance. *Raritan*, 322 N.C. at 206, 367 S.E.2d at 612. North Carolina's Pattern Jury Instructions instruct that "[a]ctual reliance is direct reliance upon false information." N.C.P.I.—Civil 800.10 (1992). Moreover, "the 'question of justifiable reliance is analogous to that of reasonable reliance in fraud actions, where it is generally for the jury to decide whether plaintiff reasonably relied upon the representations made by defendant.' " *Marcus Bros. Textiles, Inc. v. Price Waterhouse, L.L.P.*, 350 N.C. 214, 224, 513 S.E.2d 320, 327 (1999) (*quoting Stanford v. Owens*, 46 N.C. App. 388, 395, 265 S.E.2d 617, 622, *disc. rev. denied*, 301 N.C. 95, —— S.E.2d —— (1980)); *see also Olivetti Corp. v. Ames Bus. Sys., Inc.*, 319 N.C. 534, 544, 356 S.E.2d 578, 584 (1987) ("Ordinarily, the question of whether an actor is reasonable in relying on the representations of another is a matter for the finder of fact."). "What is reasonable is, as in other cases of negligence, dependent upon the circumstances." *Marcus Bros. Textiles*, 350 N.C. at 225, 513 S.E.2d at 327 (citation and quotation marks omitted).

The evidence presented at trial concerning the reasonableness of Plaintiff's reliance on the information he received from the Town, viewed in the light most favorable to Plaintiff, tended to show the following: The Local Governmental Employees' Retirement System Employer Manual, distributed by the North Carolina Department of State Treasurer to the Town, as a local governmental unit and

employer, states that "*[i]t is the responsibility of the employer* to ensure that all eligible members are reported to the LGERS, as required by State law, and to remit monthly contributions in an accurate and timely manner." (Emphasis added). The Manual further "advises all personnel and payroll offices to contact LGERS when they are in doubt about a specific question or set of circumstances." Gary Austin, the Special Assistant to the Senior Deputy Director of the State Retirement System, testified that, as a general rule, all communications initiated by LGERS to employees are conveyed through the employer.[6] Furthermore, until 2006, only the employer could access LGERS information via computer.

The Town, through its Finance Officer, administered LGERS for the Town and its employees. Consistent with this responsibility, the Finance Officer enrolled employees in the system, prepared necessary forms for the system, and provided manuals and pamphlets to employees and retirees. With respect to retirees, the only interactions initiated by LGERS after retirement were to send the retiree a pamphlet, which Plaintiff did not recall receiving, and his or her monthly check.

Plaintiff had relied on the City of Eden's Finance Officer, Ms. Blackstock, to enroll him in LGERS when he began to work for Eden in 1967 and to assist him in applying for retirement benefits when he retired in 1994. During his 26-year career with the City of Eden, Plaintiff had no interaction with LGERS, except for receiving periodic statements of his retirement account.

When Plaintiff was recruited to work for the Town, he was referred to the Town Finance Officer, Ms. Winn, to determine if he could work for the Town without jeopardizing his retirement benefits. Ms. Winn looked up some information on her computer and told Plaintiff that he could work for the Town if he met the following conditions: (1) that he receive no benefits, *i.e.*, no vacation, holiday leave, or other benefits which "regular" employees for the Town received; (2) that he *not* be enrolled in LGERS; and (3) that he receive only the statutory maximum salary provided under the salary cap. Ms. Winn did not inform Plaintiff of any restriction on the number of hours he could work to avoid affecting his retirement benefits.

Based on Ms. Winn's information, Plaintiff commenced work for the Town (1) without benefits; (2) without becoming a member of LGERS; and (3) while receiving a salary which did not exceed the salary cap. Each year thereafter, several months prior to the end of the

---

6. It was not until 2008 that LGERS initiated direct mailings to employees.

year, the Town would calculate how much Plaintiff could earn in the upcoming year under the salary cap and set Plaintiff's salary accordingly. The Town relayed this salary information to Plaintiff either in a meeting or by giving him a slip of paper with his salary stated thereon. Plaintiff worked for the Town from 1996 through 2007, during which time Plaintiff continued to comply with the above-stated conditions in order not to jeopardize his retirement benefits. We conclude that these actions evidence Plaintiff's actual reliance on the Town's advice.

The Town argues, however, that Plaintiff began to receive sick benefits, in contravention of the first requirement that he not receive benefits, and, thus, Plaintiff failed to actually rely on Ms. Winn's representations. We disagree.

Regular full-time employees of the Town receive the following employment benefits: vacation pay, holiday pay, sick leave, health care insurance, life insurance, the opportunity to participate in the Town's 401(k) plan, and enrollment in the State Retirement System. It is undisputed that from 1994 through 2006, Plaintiff did not receive vacation pay, holiday pay, or life insurance; did not have the opportunity to invest in the Town's 401(k) plan; and was not enrolled in LGERS.

Around the end of 1999, Plaintiff became concerned that his heart condition would require treatment and cause him to miss work. He approached Bob Wyatt, Town Administrator, and asked if he could receive compensated leave time if he needed to miss work. Mr. Wyatt approached the Town Council and, after obtaining approval from the Council, instructed Plaintiff to record eight hours each month on his time sheets to cover any absence from work due to sickness. These hours were logged in a record of compensatory time maintained by the Finance Officer.

It is evident that Plaintiff began his employment without any "regular" benefits and was attempting to comply with the requirement by asking Mr. Wyatt how he might be able to receive compensated leave time. Furthermore, it is evident from the process by which Mr. Wyatt and the Town Council approved Plaintiff's compensatory time that the Town was also attempting to comply with this requirement and did not consider Plaintiff a regular, full-time employee after the compensatory time was approved. We thus conclude that Plaintiff's actions evidence actual reliance on the Town's advice.[7]

---

7. Moreover, to the extent that the Town's approval of compensated leave time constituted grounds for Plaintiff's disqualification for his retirement benefits, such advice could arguably constitute further negligent misrepresentation by the Town.

Defendant nonetheless argues that Plaintiff offered insufficient evidence that Plaintiff's reliance was reasonable because he failed to show he was denied the opportunity to investigate or that he could not have learned the true facts by exercise of reasonable diligence. In essence, the Town argues that it was Plaintiff's duty to investigate— that is, to doubt the Town's veracity and ascertain the facts for. himself. We categorically reject the Town's contention.

"[A]man is not expected to deal with another as if he is a knave, and certainly not unless there is something to excite his suspicion." *White Sewing Mach. Co. v. Bullock*, 161 N.C. 1, 8, 76 S.E. 634, 637 (1912). Where the parties are not on equal footing, and the defendant who possesses superior knowledge and/or experience makes a representation "containing nothing so improbable or unreasonable as to put the other party upon further inquiry or give him cause to suspect that it is false, and an investigation would be necessary for him to discover the truth, the statement may be relied on." *Id.* (citation and quotation marks omitted).[8] If, in such an instance, the plaintiff who relies on the false or misleading representation is injured, the defendant "will not be heard to say that he is a person unworthy of belief and that plaintiff ought not to have trusted him, or that plaintiff was negligent and was cheated through his own credulity." *White Sewing Machine*, 161 N.C. at 8, 76 S.E.2d at 637 (citation and quotation marks omitted).

In this case, Plaintiff and the Town were not on equal footing. The Town, which was in a position of authority and was responsible for enrolling Plaintiff in LGERS if he qualified, possessed superior knowledge and experience with LGERS than Plaintiff and possessed superior access to printed and electronic material concerning LGERS than Plaintiff. Moreover, there was nothing in the Town's initial representation to Plaintiff, through Ms. Winn, or the Town's subsequent representations to Plaintiff regarding his yearly salary,[9] that would put a person of ordinary prudence upon inquiry. Plaintiff understood

8. *Cf. Libby Hill Seafood Restaurants, Inc. v. Owens*, 62 N.C. App. 695, 699-700, 303 S.E.2d 565, 569 ("A purchaser *who is on equal footing* with the vendor and has equal means of knowing the truth is contributorily negligent if he relies on a vendor's statements regarding the physical condition of property.") (emphasis added), *disc. review denied*, 309 N.C. 321, 307 S.E.2d 164 (1983).

9. Although the Town argues that Ms. Winn's initial representation was not "false" since Plaintiff was not working more than 1,000 hours at the time she gave him the information, such argument is irrelevant, at best, where the Town continued to represent to Plaintiff that he could receive his retirement benefits if his salary was below the salary cap even after Plaintiff's hours exceeded 1,000.

that the Town was cognizant of the facts and rules concerning his employment, and Plaintiff relied upon the Town's positive and unequivocal statements. There was absolutely nothing to arouse Plaintiff's suspicion or to induce him to believe that the Town did not know the truth. Accordingly, Plaintiff presented sufficient evidence upon which a jury could conclude that his reliance upon the Town's advice was reasonable.

Citing *Eastway Wrecker Serv. v. City of Charlotte*, 165 N.C. App. 639, 645, 599 S.E.2d 410, 414 (2004), *aff'd per curiam*, 360 N.C. 167, 622 S.E.2d 495 (2005), the Town argues further that when the party relying on a false or misleading representation could have discovered the truth upon inquiry, that party must show that he was denied the opportunity to investigate or that he could not have learned the true facts by exercise of reasonable diligence.

In response, Plaintiff argues that this requirement has only been applied in commercial settings involving real estate or business and that, in contrast to a commercial arms-length transaction, Plaintiff had every reason to trust the Town Finance Officer who was charged with the duty to inform him of the requirements of the retirement system. However, we need not determine whether Plaintiff was *required* to show that he was denied the opportunity to investigate, or that he could not have learned the true facts by exercise of reasonable diligence, because we conclude that the evidence was sufficient to show that Plaintiff could not have learned the true facts by exercise of reasonable diligence.

As discussed *supra*, the Town possessed superior knowledge and experience with LGERS than Plaintiff, possessed superior access to printed and electronic material concerning LGERS than Plaintiff, and was advised by LGERS "to contact the LGERS when they are in doubt about a specific question or set of circumstances." Even in the Town's superior position, however, the Town did not determine *for 12 years* that Plaintiff's benefits were subject to termination if he worked more than 1,000 hours. Accordingly, it cannot reasonably be asserted that Plaintiff would have discovered that his retirement benefits were subject to termination if he worked more than 1,000 hours, had he made further reasonable inquiry into the matter.

Given the Town's position of authority and its superior knowledge and experience with LGERS, Plaintiff had every reason to trust the Town's advice concerning the requirements of LGERS. Thus, by inquiring with proper Town officials, Plaintiff *did* exercise reason-

able diligence in attempting to determine how he could return to work with the Town without jeopardizing his retirement benefits. Plaintiff was not required to distrust the Town's information and make a separate inquiry into the specifics of North Carolina's retirement statutes. Accordingly, Plaintiff presented substantial evidence that he justifiably relied on the Town's misrepresentations.

We thus conclude that Plaintiff presented substantial evidence to support the jury's verdict on his negligent misrepresentation claim, and the trial court erred in granting Defendant's motion for directed verdict and JNOV. The trial court's order on this issue is reversed, the trial court's judgment entered in favor of Defendant is vacated, and the jury verdict is reinstated.

In light of our holding, the Town's argument on its cross-appeal, contending that the trial court erred in failing to grant the Town summary judgment on this issue, is overruled.

## 2. Wrongful Discharge

[2] Plaintiff next argues that the trial court erred in directing a verdict against him on his wrongful discharge claim. Specifically, Plaintiff argues that he offered substantial evidence that the Town "regularly employ[ed] 15 or more employees," as required by N.C. Gen. Stat. § 143-422.2. We agree.

The North Carolina legislature has declared that "[i]t is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees." N.C. Gen. Stat. § 143-422.2 (2009).

At issue is the interpretation to be accorded the statutory term "regularly employ[.]" "[T]he plain language of this statute provides no guidance concerning the requisite elements to establish the *prima facie* case of a claim under it." *Newton v. Lat Purser & Assocs.*, 843 F. Supp. 1022, 1025 (W.D.N.C. 1994). Moreover, we know of no North Carolina court decision directly construing the term "regularly employ" as applicable under this statute. We thus "look to federal decisions for guidance in establishing evidentiary standards and principles of law to be applied in discrimination cases." *N.C. Dept. of Corr. v. Gibson*, 308 N.C. 131, 136, 301 S.E.2d 78, 82 (1983); *see also Brewer v. Cabarrus Plastics, Inc.*, 130 N.C. App. 681, 685-86, 504 S.E.2d 580, 584 (1998), *disc. review denied*, 350 N.C. 91, 527 S.E.2d 662 (1999).

Similar to N.C. Gen. Stat. § 143-422.2, Title VII of the Civil Rights Act prohibits an employer "who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year" from discriminating against an employee on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e (2005). To count an individual as an "employee" under section 2000e(b), "all one needs to know about a given employee for a given year is whether the employee started or ended employment during that year and if so, when. He is counted as an employee for each working day after arrival and before departure." *Walters v. Metro. Educ. Enters.*, 519 U.S. 202, 211, 136 L. Ed. 2d 644, 654 (1997). "Whether the employee is actually working or receiving pay for each day is irrelevant, so long as he or she appears on the company payroll." *Russell v. Buchanan*, 129 N.C. App. 519, 522, 500 S.E.2d 728, 730, *disc. review denied*, 348 N.C. 501, 510 S.E.2d 655 (1998). Thus, under this so-called "payroll method," if 15 or more individuals appear on the employer's payroll for 20 or more weeks during the year, the employer is governed by Title VII. *Metro. Educ. Enters.*, 519 U.S. at 211, 136 L. Ed. 2d at 654.

The "payroll method" has also been adopted by the Equal Employment Opportunity Commission under the Age Discrimination in Employment Act of 1967, which, like Title VII, applies to an "employer" "who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year[.]" *See* 29 U.S.C. § 630(b) (2009); Equal Employment Opportunity Commission Policy Guidance No: N-915-052, "Whether Part-Time Employees Are Employees Within the Meaning of § 701(b) of Title VII and § 11(b) of the ADEA," (Apr. 20, 1990).[10]

"The ultimate purpose of . . . [N.C. Gen. Stat. §] 143-422.2, and Title VII . . . is the same; that is, the elimination of discriminatory practices in employment." *Gibson*, 308 N.C. at 141, 301 S.E.2d at 85. Accordingly, we find the language of Title VII, and the principles of law applied to claims arising under Title VII, to be instructive here. We conclude that an employer regularly employs 15 or more employees, and is thus governed by N.C. Gen. Stat. § 143-422.2, when 15 or more employees appear on the employer's payroll each working day during

---

10. The Department of Labor has likewise adopted the "payroll method" under the Family and Medical Leave Act of 1993, which defines an "employer" as a company who "employs 50 or more employees for each working day during each of 20 or more calendar work weeks in the current or preceding calendar year." *See* 29 U.S.C. § 2611(4)(A)(I) (2009); 29 CFR § 825.105(b)-(d) (2009).

each of 20 or more calendar work weeks in the current or preceding calendar year.

The Town argues, however, that an employee must work for a minimum of 1,000 hours per year to be considered "regularly employed" under N.C. Gen. Stat. § 143-422.2. In support of its position, the Town first relies on Title 20. Department of State, Chapter 2. Retirement Systems, Subchapter 2C. Local Governmental Employees' Retirement System, Section .0800 Membership, Subsection .0802 Regularly Employed, of the North Carolina Administrative Code which states, "An officer or employee [who] is in a regular position, the duties of which require not less than 1,000 hours of service per year[,] shall be an employee as defined in N.C. Gen. Stat. § 128-21(10)." However, because N.C. Gen. Stat. § 128-21(10) defines an "employee" solely for the purposes of the North Carolina Local Governmental Employees' Retirement System, we conclude that the Town's reliance is misplaced. As N.C. Gen. Stat. § 143-422.2 and the public policy prohibiting discrimination by an employer in the workplace are wholly unrelated to N.C. Gen. Stat. § 128 et. seq. and the relevant administrative regulations governing the North Carolina Local Governmental Employees' Retirement System, the Town's argument is unavailing.

The Town also cites for support of its position Patterson v. L. M. Parker & Co., 2 N.C. App. 43, 162 S.E.2d 571 (1968), a workers' compensation case in which this Court stated that "the term' regularly employed' connotes employment of the same number of persons throughout the period with some constancy." Id. at 48-49, 162 S.E.2d at 575. While the term "regularly employ" as used in N.C. Gen. Stat. § 143-422.2 similarly connotes employment of the same number of persons throughout the period with some constancy, such constancy does not require employees to work at least 1,000 hours. Instead, as we have already concluded, constancy of employment is evidenced by the requisite number of individuals appearing on the employer's payroll each working day during each of 20 or more calendar work weeks in the current or preceding calendar year.

At trial, Shirley Price, Finance Officer for the Town starting in 2007, testified, based on forms submitted by the Town to the Employment Security Commission, that "the number of covered workers who worked during or received pay for the payroll period" for the first three quarters of 2007[11] and the first quarter of 2008 was as follows:

---

11. Ms. Price testified that the fourth quarter records for 2007 were not available.

2007
    first quarter:
           first month, 19 employees
           second month, 20 employees
           third month, 18 employees
    second quarter:
           first month, 47 employees
           second month, 41 employees
           third month, 48 employees
    third quarter:
           first month, 11 employees
           second month, 20 employees
           third month, 20 employees
2008
    first quarter:
           first month, 21 employees
           second month, 21 employees
           third month, 23 employees

While the Town argues that these numbers include many employees who did not work at least 1,000 hours, the Town does not contest that this evidence was sufficient to show that the Town regularly employed 15 or more employees based on the "payroll method." We conclude that the evidence was sufficient to establish that the Town "regularly employ[ed] 15 or more employees[.]" N.C. Gen. Stat. § 143-422.2. Accordingly, the trial court erred in directing a verdict against Plaintiff on this issue, and the matter is remanded to the trial court for further proceedings consistent with this opinion.

Based on our holding, the Town's argument on its cross-appeal, contending that the trial court erred in failing to grant the Town summary judgment on this issue, is overruled.

### B. Defendant's Claims

### 1. Jury Instruction

[3] Defendant contends that the trial · court erred by refusing Defendant's request to instruct the jury that Plaintiff *must* prove that he was denied the opportunity to investigate or that he could not have learned the true facts by exercise of reasonable diligence. We disagree.

To prevail on this issue, Defendant must demonstrate that "(1) the requested instruction was a correct statement of law and (2) was supported by the evidence, and that (3) the instruction given, consid-

ered in its entirety, failed to encompass the substance of the law requested and (4) such failure likely misled the jury." *Liborio v. King*, 150 N.C. App. 531, 534, 564 S.E.2d 272, 274 (*citing Faeber v. E. C. T. Corp.*, 16 N.C. App. 429, 430, 192 S.E.2d 1, 2 (1972) (upholding instruction on grounds that it "sufficiently covered the meaning of the terms" that defendant requested trial court to define in its charge to jury)), *disc. review denied*, 356 N.C. 304, 570 S.E.2d 726 (2002). When a request is made for a specific jury instruction that is correct as a matter of law and is supported by the evidence, the trial court is required to give an instruction expressing "at least the substance of the requested instruction[.]" *Parker v. Barefoot*, 130 N.C. App. 18, 20, 502 S.E.2d 42, 44 (1998), *rev'd on other grounds*, 351 N.C. 40, 519 S.E.2d 315 (1999). On appeal, this Court "must consider and review the challenged instructions in their entirety; it cannot dissect and examine them in fragment" in order to determine if the court's instruction provided "the substance of the instruction requested[.]" *Id.*

The trial court instructed the jury with respect to the element of justifiable reliance as follows:

> [T]hat Plaintiff actually relied on the false information supplied by the Defendant and that the Plaintiff's reliance was justifiable. Actual reliance is direct reliance upon false information. Reliance is justifiable if, under the same or similar circumstances, a reasonable person, in the exercise of ordinary care, would have relied on the false information and/or would not have discovered the information was false. *In this case, Plaintiff's reliance may be justified if Plaintiff could not have discovered the truth about the Local Governmental Employees' Retirement System rules by the exercise of reasonable diligence or if the Plaintiff was induced by the Defendant to forego additional investigation to learn about those rules.*

(Emphasis added). The Town's proposed jury instruction differed from the emphasized language as follows:

> In this case, Plaintiff's reliance would be justified *only* if Plaintiff could not have discovered the truth about the State Retirement System rules about re-employment after retirement by the exercise of reasonable diligence or if the Plaintiff was induced by the Town of Stoneville to forego additional investigations to learn about the State Retirement System's rules regarding re-employment after retirement.

(Emphasis added).

The Town argues that the trial court's failure to instruct the jury as proposed by the Town misled the jury because the instruction allowed the jury to find justifiable reliance "even if Plaintiff could have discovered the truth through reasonable diligence."

We need not determine whether the Town's proffered instruction was a correct statement of the law because we conclude that Defendant has failed to demonstrate that the trial court's instruction "likely misled the jury[.]" As explained *supra*, Plaintiff could not have discovered the truth about the Local Governmental Employees' Retirement System rules by the exercise of reasonable diligence. Defendant's argument is overruled.

## 2. Submission of Issues

[4] The Town finally argues that the trial court submitted an insufficient verdict sheet to the jury. Specifically, the Town argues that the verdict sheet did not inquire into whether Plaintiff justifiably relied upon the Town's representations.

"[T]he trial judge must submit to the jury such issues as are necessary to settle the material controversies raised in the pleadings and supported by the evidence." *Rental Towel & Uniform Serv. v. Bynum Int'l, Inc.*, 304 N.C. 174, 176, 282 S.E.2d 426, 428 (1981). " 'The number, form and phraseology of the issues lie within the sound discretion of the trial court, and the issues will not be held for error if they are sufficiently comprehensive to resolve all factual controversies and to enable the court to render judgment fully determining the cause.' " *Griffis v. Lazarovich*, 161 N.C. App. 434, 440, 588 S.E.2d 918, 923 (2003) (*quoting Chalmers v. Womack*, 269 N.C. 433, 435-36, 152 S.E.2d 505, 507 (1967)), *disc. review denied*, 358 N.C. 375, 598 S.E.2d 135 (2004). Further, N.C. R. Civ. P. 49(b) provides that "issues shall be framed in concise and direct terms, and prolixity and confusion must be avoided by not having too many issues." N.C. Gen. Stat. § 1A-1, Rule 49(b) (2009).

The Town proposed that the following issues be presented to the jury:

Did the Plaintiff justifiably rely on a negligent misrepresentation made by the Defendant?

Did such reliance cause him financial damage?

What amount, if any, is the Plaintiff entitled to recover from the Defendant?

CAWTHORN v. MISSION HOSP., INC.

[211 N.C. App. 42 (2011)]

The trial court submitted the following issues to the jury:

1. Was the plaintiff financially damaged by a negligent misrepresentation of the Defendant?

2. What amount is the Plaintiff entitled to recover from the defendant for negligent misrepresentation?

The issues submitted to the jury properly reflect the "material controversies" involved in this negligent misrepresentation action. *Uniform Serv.*, 304 N.C. at 176, 282 S.E.2d at 428. The trial court did not abuse its discretion by failing to submit one element of negligent misrepresentation as a separate issue or by combining the elements of the offense of negligent misrepresentation into one issue. *Griffis*, 161 N.C. App. at 440-41, 588 S.E.2d at 923. We conclude that the issues as presented allowed the jury to render judgment fully determining the cause. *Chalmers*, 269 N.C. at 435-36, 152 S.E.2d at 507. This argument is overruled.

For the reasons stated, the order and judgment of the trial court are

REVERSED in part, and REVERSED and REMANDED in part.

Chief Judge MARTIN and Judge STROUD concur.