Oliver v. Brown & Morrison, Ltd., 2022 NCBC 16.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21 CVS 6678

PERRY L. OLIVER,

        Plaintiff,

v.

BROWN & MORRISON, LTD., a North
Carolina Business Corporation, and
TIMOTHY J. MARKS, as President and
Sole Shareholder of BROWN &
MORRISON, LTD., and individually,
SARA LYNN LITTLE, CPA, PLLC, a
North Carolina Professional Limited
Liability Company, and EARLE
HILTON "PETE" WARD, CPA,
individually,

        Defendants.

**ORDER AND OPINION ON
MOTION TO DISMISS OF
DEFENDANTS SARA LYNN
LITTLE, CPA, PLLC AND EARLE
HILTON "PETE" WARD, CPA**

1.    **THIS MATTER** is before the Court upon the 1 July 2021 filing of the Motion to Dismiss of Defendants Sara Lynn Little, CPA, PLLC and Earle Hilton "Pete" Ward, CPA (the "Motion"). (ECF No. 13 ["Mot."].) The Motion seeks to dismiss all claims brought against Defendants Sara Lynn Little, CPA, PLLC ("Little") and Earle Hilton "Pete" Ward, CPA ("Ward") (collectively referred to as the "Moving Defendants") in Plaintiff Perry L. Oliver's ("Oliver") Complaint. (ECF No. 3 ["Compl."].)

2.    For the reasons set forth herein, the Court hereby **GRANTS IN PART** and **DENIES IN PART** the Motion.

*Lake Norman Law Firm, by Rick Ruffin, for Plaintiff Perry L. Oliver.*

*Erwin, Bishop, Capitano & Moss, P.A., by Anthony Todd Capitano and Erin Christine Huegel, for Defendants Brown & Morrison, Ltd., and Timothy J. Marks.*

*Sharpless McClearn Lester Duffy, PA, by Frederick K. Sharpless, for Defendants Sara Lynn Little, CPA, PLLC, and Earle Hilton "Pete" Ward, CPA.*

Robinson, Judge.

## I. INTRODUCTION

3. Moving Defendants seek to have dismissed both claims for relief alleged against them by Oliver in his Complaint: (1) the Third Claim for Relief (Negligent Misrepresentation); and (2) the Fifth Claim for Relief (Negligence).[1]

## II. FACTUAL BACKGROUND

4. The Court does not make findings of fact on the Motion but recites only those facts that are relevant and necessary to the Court's determination of the Motion.

5. B&M is a North Carolina corporation. (Compl. ¶ 2.) B&M operates as a distributor and manufacturer's representative providing engineering solutions by offering process equipment products and services for industrial applications. (Compl. ¶ 17.)

6. Oliver joined B&M on 1 January 2015 pursuant to the terms and conditions of a Memorandum of Understanding and Stock Offer (the "Memorandum"). (Compl. ¶ 15.)

---

[1] The other various claims for relief in Oliver's Complaint are not addressed herein as they relate only to Defendants Timothy J. Marks ("Marks") and/or Brown & Morrison, Ltd. ("B&M"). Those other claims were addressed in the Court's Order and Opinion on Brown & Morrison, Ltd.'s and Timothy J. Marks' Rule 12(b)(6) Motion to Dismiss. (ECF No. 49.)

7. The Memorandum, which was allegedly prepared by Defendant Marks, referred to the B&M Stock Partner Agreement and indicated that a new agreement would need to be executed effective 1 January 2015, between Doug Jackson ("Jackson"), the former president of B&M, Oliver, and Marks. (Compl. ¶¶ 15, 18, 19.)

8. However, in the Complaint, Oliver states the Stock Partner Agreement was actually a stock *purchase* agreement which outlined B&M's share ownership, stock transfer restrictions, terms and conditions for stock transactions, and the formula for calculating the "Per-Share Purchase Price." (Compl. ¶¶ 20–21.)

9. B&M utilizes the Accrual-Accounting Method for financial reporting. (Compl. ¶ 32.)

10. At the time of his dealings with B&M, Oliver also owned all the stock of a separate North Carolina corporation called Chapman Associates, Inc. ("Chapman"), which was a manufacturer's representative like B&M, offering similar products and services. (Compl. ¶¶ 34, 36.)

11. On 1 January 2015, Oliver purchased a one-third undivided interest in B&M through the purchase of 100 shares of B&M common, no-par stock. Oliver agreed to pay for the stock he purchased by: (1) signing a $100,000.00 Promissory Note payable to B&M; and (2) transferring identified assets of Chapman to B&M. (Compl. ¶¶ 33, 35.)

12. B&M and Chapman's sales were either direct sales of products purchased for resale, or indirect sales through product manufacturers for which commissions were earned by B&M or Chapman. (Compl. ¶ 38.) At B&M, the commissions earned

from indirect sales through product manufacturers are known as "Open-Rep Commissions." (Compl. ¶ 39.)

13. After becoming a shareholder in B&M, Oliver discovered that not all Accounts Receivables or Commissions Receivables were being included in the accrual-based accounting records at B&M. (Compl. ¶ 46.)

14. Oliver alleges that the failure to account for Open-Rep Commissions Receivables by B&M resulted in an understatement of the company's value. (Compl. ¶ 51.)

15. Oliver alleges that Defendants Little and Ward were aware of and complicit in these accounting practices. (Compl. ¶¶ 6, 10, 52, 76, 77, 79.)

16. Little provides professional accounting and tax-related services to B&M. (Compl. ¶ 8.) Ward has been employed by or associated with Little and has served in a fiduciary capacity as the outside accounting, tax reporting contact, and advisor between Little and B&M at all times relevant to this matter. (Compl. ¶ 12.)

17. Upon discovering the failure to properly account for Open-Rep Commissions, Oliver immediately requested the inclusion of Open-Rep Commissions Receivables in B&M's reported financial information, particularly because internal practices were not accurately tracking this information. (Compl. ¶¶ 55, 61.)

18. Oliver claims that "Open-Rep Commissions Receivables were a material portion of the overall B&M value." (Compl. ¶ 63.)

19. Oliver alleges that "[t]he absence of Open-Rep Commissions Receivables in the calculations and tax reporting prepared by Little and Ward on behalf of B&M

clearly reflects Little and Ward's intentional and/or negligent omission of these material amounts[.]" (Compl. ¶ 79.)

20.     Therefore, the exclusion of the Open-Rep Commissions Receivables in the financial statements prepared using the Accrual-Accounting Method by B&M allegedly resulted in both an understatement of company assets, net worth, and Per-Share Purchase Price of company stock.  (Compl. ¶ 87.)

21.     On or about 1 January 2019, Jackson sold his 100 shares of B&M stock back to B&M.  (Compl. ¶ 88.)

22.     On or about 8 March 2019, Jackson submitted his letter of resignation from B&M to be effective 30 March 2019.  (Compl. ¶ 93.)  However, per Oliver's Complaint, the "Due On A Specific Date Promissory Note" issued by B&M to Jackson for the repurchase of Jackson's stock was backdated to 1 January 2019.  (Compl. ¶ 94.)

23.     Oliver alleges that the "Per-Share Purchase Price Formula" used for calculating Jackson's stock value referenced the use of "Accrual basis Net Worth as of 12/31/2018" as the starting basis.  (Compl. ¶ 96.)

24.     This transaction left Marks and Oliver as the only remaining B&M shareholders as of 1 January 2019.  (Compl. ¶ 97.)  Marks then assumed the position of president of B&M.  (Compl. ¶ 98.)

25.     In August 2019, Oliver emailed his outside CPA, Shannon Earp ("Earp"), copies of B&M tax returns for her review, as well as possible recommendations to reduce the amount of taxes being paid by B&M shareholders.  (Compl. ¶ 101.)  Oliver

copied Marks and Vickie Stamey ("Stamey"), B&M's Controller, on the email. (Compl. ¶ 100.)

26. Also during August 2019, Oliver emailed Ward several tax questions relating to being a B&M shareholder. (Compl. ¶ 102.) As alleged, Ward did not respond to Oliver's emails, (Compl. ¶ 103), or return Oliver's phone calls during this time, (Compl. ¶ 104).

27. Meanwhile, Earp replied to Oliver on 30 August 2019. (Compl. ¶ 106.) Earp purportedly indicated that the amount of taxes being paid by the B&M shareholders was "absurd" and Earp was concerned about B&M not including Open-Rep Commissions Receivables in the company's financial statements. (Compl. ¶¶ 106, 108.) According to the Complaint, Earp indicated that Little and Ward's practices were not in line with good accounting practices. (Compl. ¶ 108.)

28. Oliver discussed Earp's findings and recommendations with Stamey and informed Stamey of Oliver's possible departure from B&M in light of Earp's findings and recommendations. (Compl. ¶ 111.) Oliver asked Stamey to relay Oliver's concerns to Marks. (Compl. ¶ 112.)

29. On 30 August 2019, Earp and Marks discussed Earp's findings and recommendations. (Compl. ¶ 113.)

30. On 16 September 2019, Oliver, Marks, and Stamey held an off-site meeting to discuss Oliver's correspondence with Earp, Marks's telephone discussion with Earp, and Oliver's potential resignation from B&M. (Compl. ¶ 114.)

31. On 24 September 2019, Marks followed up with Oliver by email for the purpose of outlining Oliver's resignation plan; Oliver allegedly reminded Marks that his resignation was not officially tendered. (Compl. ¶¶ 115–16.)

32. On 10 December 2019, Oliver emailed Marks, Little, Ward, Stamey, and Earp a copy of a Per-Share Purchase Price calculation that he computed for his sale of stock back to B&M based on the reported November 2019 financial statements. (Compl. ¶ 118.) At that time, Oliver had failed to include the Open-Rep Commissions Receivables in his Per-Share Purchase Price calculation by mistake, but this oversight was later disclosed. (Compl. ¶ 120.) According to the Complaint, the inclusion of the Open-Rep Commissions Receivables would significantly increase the Per-Share Purchase Price to be paid to Oliver. (Compl. ¶ 122.)

33. The B&M "Weekly Financial Information" spreadsheet for the week of 22 December 2019 indicated Open-Rep Commissions Receivables in the amount of $1,217,516.38 that were not included on the B&M financial statements prepared according to the Accrual-Accounting Method. (Compl. ¶ 123.)

34. Given that Oliver held 100 shares of the 200 total outstanding shares of B&M stock, Oliver alleged that the inclusion of the Open-Rep Commissions Receivables would have resulted in a Per-Share Purchase Price increase of $6,087.58 (for a total increase of $608,758.00 for Oliver's shares). (Compl. ¶ 124.)

35. In December 2019, Oliver attended several cardiologist appointments due to personal health issues. (Compl. ¶ 125.) He was ultimately advised to undergo coronary bypass surgery. (Compl. ¶ 126.)

36. After allegedly receiving no response from Little or Ward to a 16 December 2019 follow-up email seeking a response regarding the accounting irregularities, Oliver emailed his letter of resignation to Marks on 18 December 2019 including an effective date of resignation of 1 January 2020. (Compl. ¶¶ 127–29.)

37. On 27 December 2019, Oliver had coronary bypass surgery. (Compl. ¶ 130.)

38. On 21 February 2020, Marks emailed the Per-Share Purchase Price buyout calculation prepared by Little and Ward for Oliver's shares at $3,950.15 per share as of the close of business 31 December 2019, which did not include Open-Rep Commission Receivables. (Compl. ¶¶ 134–35.)

39. During this time, Oliver recovered from surgery, and internal email communications between Oliver and Marks confirm continued debate and disagreement between them regarding the Per-Share Purchase Price calculation. (Compl. ¶¶ 138–39.)

40. Oliver also pointed out to B&M, Little, and Ward that they failed to properly calculate and account for the Promissory Note payable to Jackson for the purchase of Jackson's stock in 2019. (Compl. ¶ 140.) Oliver alleges that the subsequent inclusion of this long-term debt reduced the net worth of B&M for the like amount of the outstanding debt and further reduced the Per-Share Purchase Price. (Compl. ¶ 142.)

41. On 21 January 2020, the first case of COVID-19 was confirmed in the U.S., and the unknowns about the coronavirus pandemic caused Oliver great concern due to his health and business affairs facing dramatic changes. (Compl. ¶¶ 146–47.)

42. Oliver contacted Chemineer, Inc. ("Chemineer"), which manufactured "Oliver's largest and best performing product prior to and during his employment with B&M," to inform them he was leaving B&M. (Compl. ¶¶ 133, 151.) Chemineer originally asked if Oliver was interested in representing it after his B&M departure; however, this "offer" was later revoked due to the pandemic's impact on the business environment. (Compl. ¶¶ 151–53.)

43. Oliver's personal tax liability for the 2019 tax year purportedly required a tax payment in excess of $66,000.00. (Compl. ¶ 155.)

44. Per the Complaint, Oliver approached Marks regarding the possibility of withdrawing his resignation and remaining with B&M, and Marks declined Oliver's offer. (Compl. ¶¶ 156–57.)

45. The stock buyout for Oliver included an initial payment of $100,000.00 upon execution of the Buyout Agreement with the balance of the calculated buyout amount being secured by a four-year note from B&M to Oliver. (Compl. ¶ 158.)

46. Oliver continued to argue his position regarding the proper calculation of the Per-Share Purchase Price, including particularly arguing to include the Open-Rep Commissions Receivables. (Compl. ¶ 160.) B&M and Marks continued to oppose Oliver's contentions regarding the necessity of accounting for Open-Rep Commissions Receivables and continued to claim that the calculations provided by Little and Ward, which excluded Open-Rep Commissions Receivables, were accurate. (Compl. ¶ 161.)

47. Despite his disagreement with the calculations of his Per-Share Purchase Price, due to his desperate financial situation, Oliver executed the Redemption Agreement as proposed by B&M and Marks on 22 April 2020. (Compl. ¶ 164.)

48. The Redemption Agreement provided for a total buyout price of $395,015.00. (Compl. ¶ 165.)

49. Oliver indicated that his treatment at the time of his resignation and stock sale differed dramatically from the treatment Jackson received from B&M in 2019 when Jackson sold his shares to the company. (Compl. ¶¶ 167–78.)

50. The Complaint alleges that, in addition to the other errors and omissions committed by Defendants regarding accounting for Open-Rep Commissions and calculating his buy-out amount, an incorrect interest rate was applied to the promissory note for his stock and his subsequent challenges to the incorrect interest rate were summarily dismissed by B&M, Marks, Little, and Ward as being incorrect. (Compl. ¶ 179.)

## III. PROCEDURAL BACKGROUND

51. The Court sets forth here only those portions of the procedural history relevant to its determination of the Motion.

52. Oliver filed the Complaint in this action on 22 April 2021.

53. Moving Defendants filed the Motion pursuant to Rule 12(b)(6) on 1 July 2021.

54. The Motion has been fully briefed, (Br. Defs. Little and Ward Supp. Mots. Dismiss, ECF No. 14 ["Br. Supp."]; Pl.'s Br. Resp. Defs. Little and Ward Mots.

Dismiss, ECF No. 21 ["Br. Resp."]; and Reply Br. Little and Ward Defs. Mots. Dismiss, ECF No. 27 ["Reply Br."]), and the Court has conducted a hearing on the Motion and heard arguments from counsel for the parties, (*See* Not. Hearing, ECF No. 30).

55. The Motion is ripe for resolution.

## IV. LEGAL STANDARD

## RULE 12(b)(6)

56. In ruling on a motion to dismiss pursuant to North Carolina Rule of Civil Procedure (the "Rules") 12(b)(6), the Court reviews the allegations in the Complaint in the light most favorable to the plaintiff. *See Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 370 N.C. 1, 5 (2017). The Court's inquiry is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory[.]" *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670 (1987). The Court accepts all well-pleaded factual allegations in the relevant pleading as true. *See Krawiec v. Manly*, 370 N.C. 602, 606 (2018). The Court is therefore not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.,* 174 N.C. App. 266, 274 (2005) (quoting *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002)).

57. Furthermore, the Court "can reject allegations that are contradicted by the documents attached, specifically referred to, or incorporated by reference in the complaint." *Moch v. A.M. Pappas & Assocs., LLC*, 251 N.C. App. 198, 206 (2016) (quoting *Laster v. Francis*, 199 N.C. App. 572, 577 (2009)). The Court may consider

these attached or incorporated documents without converting the Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment. *Id.* (citing *Schlieper v. Johnson*, 195 N.C. App. 257, 261 (2009)). Moreover, the Court "may properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers even though they are presented by the defendant." *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60 (2001) (citing *Robertson v. Boyd,* 88 N.C. App. 437, 441 (1988)).

58. Our Supreme Court has noted that "[i]t is well-established that dismissal pursuant to Rule 12(b)(6) is proper when '(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.' " *Corwin v. British Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (quoting *Wood v. Guilford Cty.*, 355 N.C. 161, 166 (2002)). This standard of review for Rule 12(b)(6) is the standard our Supreme Court "routinely uses . . . in assessing the sufficiency of complaints in the context of complex commercial litigation." *Id.* at n.7 (citing *Krawiec*, 370 N.C. at 606 and *Christenbury Eye Ctr.*, 370 N.C. at 5).

## RULE 8

59. In addition to their argument that the claims against them should be dismissed pursuant to Rule 12(b)(6), Moving Defendants make a secondary argument that the Complaint should be dismissed pursuant to Rule 8(a). (Br. Supp. 8–10.)

Moving Defendants' argument is that Plaintiff's allegations are prolix, unnecessarily long, and verbose.

60. Rule 8(a)(1) requires an effective pleading to set out "[a] short and plain statement of the claim sufficiently particular to give the court and the parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved showing that the pleader is entitled to relief[.]" Rule 8(a)(2) further requires the pleading to contain "[a] demand for judgment for the relief to which he deems himself entitled."

61. "By enacting . . . Rule 8(a)[ ] our General Assembly adopted the concept of notice pleading." *Wake County v. Hotels.com, L.P.*, 235 N.C. App. 633, 646 (2014). Under this notice pleading rule, "a statement of claim is adequate if it gives sufficient notice of the claim asserted to enable the adverse party to answer and prepare for trial, to allow for the application of the doctrine of res judicata, and to show the type of case brought." *Sutton v. Duke*, 277 N.C. 94, 102 (1970) (cleaned up). "Such simplified notice pleading is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues." *Pyco Supply Co., Inc. v. Am. Centennial Ins. Co.*, 321 N.C. 435, 442–43 (1988) (citing *Sutton,* 277 N.C. 94).

## V. ANALYSIS

### A. NEGLIGENT MISREPRESENTATION

62. Moving Defendants first seek dismissal of Oliver's negligent misrepresentation claim against them.

63. "It has long been held in North Carolina that 'the tort of negligent misrepresentation occurs when (1) a party justifiably relies (2) to his detriment (3) on information prepared without reasonable care (4) by one who owed the relying party a duty of care.' " *Simms v. Prudential Life Ins. Co. of Am.*, 140 N.C. App. 529, 532 (2000) (quoting *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 206 (1988) (cleaned up)). When alleging negligent misrepresentation, a plaintiff must satisfy the heightened pleading standard for fraud found in Rule 9. N.C.G.S § 1A-1, Rule 9(b); *see also Deluca v. River Bluff Holdings II, LLC,* 2015 NCBC LEXIS 12, at **20–21 (N.C. Super. Ct. Jan. 28, 2015); *BDM Invs. v. Lenhil, Inc.,* 2012 NCBC LEXIS 7, at **56 (N.C. Super. Ct. Jan. 18, 2012); *Breedon v. Richmond Cmty. Coll.,* 171 F.R.D. 189, 198–99 (M.D.N.C. 1997).

64. Moving Defendants submit—similarly to B&M's arguments for dismissal of the negligent misrepresentation claim as fleshed out in the Court's Order and Opinion on B&M and Marks's Rule 12(b)(6) Motion to Dismiss, (ECF No. 49)—that Oliver cannot satisfy the "justifiable reliance" element of a negligent misrepresentation claim because he admits that he knew the true facts underlying the alleged "misrepresentation." (Br. Supp. 6–7.) The Court agrees for the same reasons stated in its Opinion on B&M and Marks's Motion to Dismiss.

65.     *Raritan* stands for the proposition that, to survive a Rule 12(b)(6) motion, a plaintiff's complaint must allege facts supporting justifiable reliance to his detriment on information prepared without reasonable care by someone who owed a duty of care to the relying party.  322 N.C. at 206.  To properly plead justifiable reliance, "a plaintiff must sufficiently allege that he made a reasonable inquiry into the misrepresentation and [ ] that he was denied the opportunity to investigate or that *he could not have learned the true facts* by exercise of reasonable diligence." *Austin v. Regal Inv. Advisors, LLC,* 2018 NCBC LEXIS 3, at *31 (N.C. Super. Ct. Jan. 8, 2018) (quoting *Rountree v. Chowan Cty.,* 252 N.C. App. 155, 163 (2017) (emphasis added) (cleaned up)).

66.     Here, Oliver admits repeatedly in the Complaint, and in fact affirmatively alleges, that he knew the true facts underlying the alleged "misrepresentation."  (*See, e.g.,* Compl. ¶ 164 ("Despite Oliver's disagreement with the content and manner in which his Per-Share Purchase Price had been calculated, he executed his Redemption Agreement on April 22, 2020, in order to secure the One Hundred Thousand Dollar ($100,000.00) initial stock sale payment.").)  As Moving Defendants put it, "[Oliver] affirmatively alleges that he engaged in this negotiation, resignation, and sale of his stock back to [B&M] with full knowledge of the disagreement between his version of what ought to be included in accrual accounting, and that adopted by [ ] Marks[.]" (Br. Supp. 6.)

67.     Oliver cannot properly allege that he justifiably relied on representations made by the Moving Defendants while also alleging that he knew the true facts

underlying those alleged "misrepresentations," and that he believed at the time that Defendants' statements were untrue.

68.     Alternatively, the Complaint fails to allege how Oliver, with reasonable diligence, could not have discovered the true facts prior to executing the agreements in question.  This failing, too, is fatal to Oliver's claim.

69.     Therefore, because Oliver cannot satisfy the justifiable reliance element, the Motion is granted as to the third claim for negligent misrepresentation, and that claim is dismissed with prejudice.

## B.     NEGLIGENCE

70.     Next, Moving Defendants seek to have the negligence claim against them dismissed.  Oliver alleges that Moving Defendants, as certified public accountants for B&M, breached a duty owed to him as an officer and shareholder of B&M when they utilized the Accrual-Accounting Method "in processing various accounting tasks on behalf of B&M[.]"  (Compl. ¶¶ 228, 236.)

71.     Oliver alleges that Moving Defendants' use of the Accrual-Accounting Method led to the omission of significant material assets of B&M from financial documents that Oliver relied on to his detriment in his capacity as officer and shareholder.  (Compl. ¶¶ 232, 236, 237.)  Further, Oliver alleges that he "has openly and continuously challenged the Accrual-Accounting Method reporting" utilized by Moving Defendants, as well as the content and manner in which his Per-Share Purchase Price had been calculated.  (Compl. ¶¶ 164, 233.)

72. Moving Defendants first argue that, under the facts as alleged by Oliver, Oliver was not owed a legal duty of care by Moving Defendants. (Br. Supp. 7.) The Court disagrees.

73. Moving Defendants rely on *Raritan River Steel Co.,* 322 N.C. 200 (1988), for the proposition that no duty was owed by them as accountants for B&M to Oliver as an officer and shareholder of B&M. (Br. Supp. 7.) In *Raritan*, the North Carolina Supreme Court adopted the approach of § 552 of the Restatement (Second) of Torts (the "Second Restatement") to determine an accountant's liability for negligence in preparing financial reports provided to third parties (the "Second Restatement Approach"). 322 N.C. at 209–10.

74. Section 552 of the Second Restatement provides that:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
>
> (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
>
>> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
>>
>> (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

Restatement (Second) of Torts § 552 (1977).

75.     The Second Restatement Approach supports the assertion that accountants for a business will ordinarily owe a duty of care to officers and shareholders of that business. § 552(2). "Our Supreme Court in *Raritan* praised the [Second] Restatement approach because it recognizes that liability should extend not only to those with whom the accountant is in privity . . . but also to those persons . . . whom he knows and intends will rely on his opinion, or whom he knows his client intends will so rely." *Lamb v. Styles*, 263 N.C. App. 633, 641–42 (2019). "Therefore, '[i]f [an accountant] knows at the time he prepares his report that specific persons, or a limited group of persons, will rely on his work, and intends or knows that his client intends such reliance, his duty of care should extend to them.'" *Id.* at 642 (quoting *Raritan*, 322 N.C. at 215).

76.     North Carolina continues to follow the Second Restatement Approach. *See Arnesen v. Rivers Edge Golf Club & Plantation, Inc.,* 368 N.C. 440, 453 (2015) ("In [*Raritan*], we reviewed in depth the duty an accountant owes to nonclients who make use of an accountant's prepared financial reports, and we find that case instructive here."); *see also Lamb*, 263 N.C. App. at 641–42 (reaffirming the use of *Raritan*). Therefore, Moving Defendants cannot rely on a lack of duty as the basis for dismissal of Oliver's negligence claim.

77.     Moving Defendants' second argument for dismissal is based on the proposition that Oliver cannot satisfy the "justifiable reliance" requirement of a negligence claim because Oliver claims to have "openly and continuously challenged"

Moving Defendants' methods and representations, upon which Oliver also claims to have relied. (Br. Supp. 6–7.)

78. "Even if a plaintiff can show circumstances giving rise to a duty[,] . . . absent a sufficient allegation and showing of justifiable reliance, a plaintiff's negligence claims fail." *Arnesen,* 368 N.C. at 449 (citing *Dallaire v. Bank of Am., N.A.,* 367 N.C. 363, 369 (2014)).

79. The Court agrees with this argument for the same reasons stated in the discussion of the negligent misrepresentation claim above. In *Raritan*, the Court stated that "[a]n accountant who prepares financial reports for his client clearly owes a duty of care to his client" and "the duty may extend to 'persons . . . whom [the accountant] knows and intends will rely on his opinion, or whom [the accountant] knows his client intends will so rely[.]" *Raritan*, 322 N.C. at 210, 214. Importantly, however, the Supreme Court also made clear that "liability will only extend if there is justifiable reliance." *Raritan,* 322 N.C. at 209–10.

80. Justifiable reliance requires actual reliance. *Id.* at 206. The "question of justifiable reliance is analogous to that of reasonable reliance in fraud actions, where it is generally for the jury to decide whether plaintiff reasonably relied upon the representations made by defendant." *Stanford v. Owens,* 46 N.C. App. 388, 395 (1980). In the event that "the facts are so clear as to permit only one conclusion[,]" the question may be decided by the Court. *Marcus Bros. Textiles v. Price Waterhouse, LLP*, 350 N.C. 214, 224–25 (1999) (citing Restatement (Second) of Torts § 552 cmt. e).

81. This is a case where the facts are clear. The Court finds that Oliver has not sufficiently alleged that he justifiably relied on Moving Defendants' representations to his detriment. As previously discussed in the analysis regarding the negligent misrepresentation claim, Oliver repeatedly contends that he disagreed with the content considered in determining his Per-Share Purchase Price and the manner in which his Per-Share Purchase Price had been calculated. (Compl. ¶ 164.) Oliver also claims to have "openly and continuously challenged" Moving Defendants' accounting methods. (Compl. ¶ 232.)

82. Oliver cannot properly allege that he justifiably relied on representations made by the Moving Defendants while also alleging that he believed at the time they were made that Defendants' statements were untrue. As such, Oliver's negligence claim must fail.[2]

83. Therefore, the Motion is granted as to the fifth claim for relief for negligence against Moving Defendants, and that claim is dismissed with prejudice.

C. **RULE 8**

84. Finally, Moving Defendants seek to have Oliver's Complaint dismissed due to the inclusion of excessive and unnecessary information which Moving Defendants claim is so egregious that it violates Rule 8's requirement that a Complaint include a "short and plan statement." (Br. Supp. 8–10.) While Oliver's Complaint is hardly a

---

[2] Moving Defendants additionally argue that the "economic loss rule" prevents Oliver's negligence claim against them. The Court needn't decide this issue because the Court finds that there was a lack of justifiable reliance necessary to support the negligence claim in this matter.

lesson in brevity or clarity, in the Court's discretion it will not dismiss Oliver's Complaint for violation of Rule 8.

85. In support of their argument relating to Rule 8, Moving Defendants argue that "[Oliver's] sprawling, 247-paragraph Complaint, largely padded by needless detail such as Black's Law Dictionary definitions and recitations of the course of the United States economy and the pandemic, constitutes, at best, a confused narrative and 'circuitous diatribe' bearing no relation to any claim[,]" and that "[t]he Complaint, in an apparent attempt to bolster its far-fetched allegations, impermissibly requires the reader to wade through a 'morass of superfluous detail.'" (Br. Supp. 8 (internal citations omitted).) Moving Defendants primarily cite to federal caselaw in support of their argument in this regard and seek to bolster their argument given the similarities between the federal companion rule and North Carolina's Rule 8. (*See* Br. Supp. 8–10.)

86. The Business Court has not often grappled with this type of Rule 8 motion seeking to dismiss a complaint for containing *too much* detail; however, when it has done so, it did not dismiss a pleading containing arguably superfluous detail. *See, e.g., Mecklenburg Cty. Buckley LLP v. Series 1 of Oxford Ins. Co. NC LLC*, 2020 NCBC LEXIS 36, at \*5–9 (N.C. Super. Ct. Mar. 23, 2020) (where the Business Court refused to strike a pleading for violation of Rule 8 finding that "[g]iven Rule 8's preference for broad freedom in pleading and Rule 12(f)'s limited and infrequent application, the Court concludes that Buckley's five-page, introduction in the context of its 47-page,

118-paragraph Complaint, is at the outer limits of—but within—the bounds of acceptable pleading and should not be stricken.").

87.     The Business Court also dealt with a Rule 8 motion in *Kingsdown, Inc. v. Hinshaw*, 2015 NCBC LEXIS 30, at *13 (N.C. Super. Ct. Mar. 25, 2015), and stated in pertinent part as follows:

> The Court initially notes that most challenges to the sufficiency of a complaint under Rule 8 are based on the lack of specific detail in the complaint, not because the complaint is too detailed and voluminous. While the Court has not located a North Carolina decision upholding a Rule 8 dismissal because the complaint was too voluminous, the Court nevertheless recognizes that federal courts have held, in certain circumstances, that dismissal of voluminous complaints may be proper under Rule 8. Based on the Court's review of [the pleading at issue] here, however, the Court cannot conclude that [the] allegations are so voluminous or incomprehensible to prevent [the opposing party] from discerning the nature and basis for [the claims] or otherwise formulating an answer to the [claims]. Accordingly, the Court does not find that [the pleading] violates the requirements of Rule 8.

88.     The Court in this instance agrees with its predecessors that, while federal caselaw exists supporting the dismissal of an excessively prolix complaint for being in violation of Rule 8, the Court does not believe Oliver's Complaint here is sufficiently egregious to warrant such a harsh penalty.[3] Therefore, the Motion under Rule 8 is denied.

## VI.     CONCLUSION

89.     For the foregoing reasons, the Court hereby **GRANTS IN PART** and **DENIES IN PART** the Motion as follows:

---

[3] The Court does not suggest that such a penalty would never be warranted, only that the Court does not impose it under the circumstances appearing here.

A. the Motion is GRANTED as to the claim for negligent misrepresentation and that claim is hereby DISMISSED WITH PREJUDICE;

B. the Motion is GRANTED as to the claim for negligence and that claim is hereby DISMISSED WITH PREJUDICE; and

C. except as herein granted, the Motion is DENIED.

**IT IS SO ORDERED**, this the 7th day of April, 2022.


/s/ Michael L. Robinson
Michael L. Robinson
Special Superior Court Judge
  for Complex Business Cases